2000 UT 70

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael W. HELMICK, Defendant and Appellant.**

No. 990358.

Supreme Court of Utah.

Aug. 25, 2000.

Jan Graham, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Salt Lake City, Les Daroczi, Ogden, for plaintiff.

Maurice Richards, Ogden, for defendant.

DURHAM, Justice:

## INTRODUCTION

¶ 1 Defendant Michael W. Helmick appeals from convictions of aggravated burglary, aggravated robbery, aggravated kidnapping, aggravated assault, and unlawful taking of a motor vehicle. Helmick raises five claims of error: (i) the trial court failed to hold a reliability hearing before it allowed an eyewitness to testify; (ii) the trial court improperly enhanced Helmick's aggravated burglary sentence because the information failed to notify him that he was subject to enhanced penalties under Utah Code Ann. § 76–3–203.1 (1999);[1] (iii) the trial court improperly enhanced Helmick's sentences for aggravated burglary and aggravated robbery because the court, rather than the jury, found that these crimes were committed by Helmick and two other persons; (iv) the trial court improperly enhanced Helmick's sentences for aggravated burglary and aggravated robbery without sentencing him first on the underlying offenses; and (v) Helmick's trial counsel was ineffective. We affirm in part, vacate in part, and remand.

1. To aid the reader, we cite the current version of this statute and note that it has not been substantively altered since its enactment in 1990.

## BACKGROUND

¶ 2 On March 14, 1998, at about 4:45 a.m., Helmick and Nicholas Boccia robbed an Ogden Flying J gas station, armed with knives. In the process of taking approximately $5200 and the manager's Dodge Caravan, Boccia stabbed the manager's hands, and subsequently tied him up and left him in the cooler for a period of time. Lesa Deboer, a Flying J employee and Helmick's girlfriend, helped plan and facilitate the robbery and acted as the getaway driver. The testimony of Boccia's brother, John Boccia, corroborated Boccia's admissions regarding Helmick's, Boccia's, and Deboer's involvement in the crime.

¶ 3 The Weber County Sheriff's Department found the manager's missing van less than half an hour after the incident at a Pilot gas station a quarter of a mile away from the Flying J. Shortly after 5:00 a.m. on March 14, Esther Montoya was at the Pilot gas station. From a distance of twenty to twenty-five feet, she saw a parked Dodge Caravan with two men leaning against it, one turned away from her, the other facing her. Although Montoya was subpoenaed to be a defense witness at trial, Helmick's lawyer dismissed her after ascertaining that she would not testify, as he had hoped, that the man she observed at the Pilot gas station on March 14 might have been Hispanic. As Montoya was about to leave the court, the prosecutor suggested that she look at Helmick to see if he looked familiar to her. Helmick's lawyer, the prosecutor, and Montoya entered the courtroom, and Montoya identified Helmick as the man she saw standing next to the Caravan and facing her at the Pilot gas station. Following this, the prosecutor called Montoya to the stand, where she testified consistently with the identification she had made moments before. Helmick's only objections to Montoya's testimony at that time concerned suggestiveness and the

method of identification, not the reliability of her testimony. However, Helmick's lawyer did cross-examine Montoya about the lighting and the distance between her and the two men.

¶ 4 The next day Helmick's lawyer moved to strike Montoya's testimony for lack of a preliminary determination as to its reliability. The trial court denied the motion, noting that Montoya's testimony was unanticipated and unopposed, and that, in any event, striking testimony that the jury had already heard would be fruitless. The judge, however, did give a jury instruction, requested by the defense, dealing with the reliability of witness identification testimony.

¶ 5 Helmick was charged with, among other things, aggravated burglary and aggravated robbery, as well as enhancements for both charges.[2] Boccia pled guilty to aggravated burglary. Pursuant to his plea agreement, he testified against Helmick. Deboer pled guilty to conspiracy to commit aggravated burglary. Ultimately, the jury found Helmick guilty on all charges. During sentencing, the trial court discussed the application of the gang enhancement under Utah Code Ann. § 76-3-203.1 to the charges and made findings about Boccia's and Deboer's involvement in the incident. The court then sentenced Helmick to nine years to life, enhanced pursuant to Utah Code Ann. § 76-3-203.1, on both the aggravated burglary and aggravated robbery charges.[3]

## ANALYSIS

### I. RELIABILITY HEARING

¶ 6 Helmick claims that he has been denied his state and federal due process rights because the trial court failed to determine the reliability of Montoya's eyewitness identification testimony before allowing her

---

2. Helmick was also charged with aggravated kidnapping, aggravated assault, and unlawful taking of a motor vehicle.

3. The sentences on these charges were to run consecutively. Additionally, pursuant to Utah Code Ann. § 76-3-203.1, the trial court imposed a one-year consecutive term on both of these charges because Helmick used a dangerous weapon in the commission of these crimes.

Moreover, the trial judge sentenced Helmick to a minimum mandatory term of ten years to life on the aggravated kidnapping charge and to zero-to-five-year terms on both the aggravated assault and unlawful taking of a motor vehicle charges. These terms were imposed to run concurrently with the sentences imposed for aggravated burglary and aggravated robbery.

to testify. This claim, unfortunately, is not accompanied in Helmick's brief by an argument that complies with rule 24 of the Utah Rules of Appellate Procedure. The rule says that an argument "shall contain the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with the citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9).

¶ 7 This court has held that " 'a reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " *State v. Thomas,* 1999 UT 2, ¶ 11, 974 P.2d 269 (quoting *State v. Bishop,* 753 P.2d 439, 450 (Utah 1988)). "Furthermore, 'it is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief.' " *Id.* (quoting *Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998)). Briefs that do not comply with rule 24 "may be disregarded or stricken, on motion or sua sponte by the court." Utah R.App. P. 24(j); *see also Mac-Kay v. Hardy,* 973 P.2d 941, 948–49 (Utah 1998) (declining to address arguments because brief failed to comply adequately with rule 24). Although Helmick's brief cites to *State v. Ramirez,* 817 P.2d 774 (Utah 1991), and the criteria listed therein for assessing the reliability of an eyewitness identification, it does not present any meaningful analysis dealing with the application of *Ramirez* to this case, nor does it explain how Helmick was prejudiced by the admission of this testimony.

¶ 8 Even if we were willing to overlook the absence of adequate briefing on this issue, it appears to have been waived at the trial level. *See* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 103.11[1] (Joseph M. McLaughlin ed., Matthew Bender 2d ed.2000) (error is waived if an objection to the admission of evidence is untimely). Under ordinary circumstances, appellate courts will not consider

an issue, including a constitutional argument, raised for the first time on appeal unless the trial court committed plain error. *See State v. Gibbons,* 740 P.2d 1309, 1311 (Utah 1987). Although an objection was made to the trial court in this case, it came after the testimony was admitted, thus depriving the court of an opportunity to consider any potential issues regarding the testimony's reliability and admissibility before it could be heard by the jury.

¶ 9 Helmick's only remaining option regarding Montoya's testimony, therefore, is to establish plain error in its admission. *See State v. Eldredge,* 773 P.2d 29, 35–36 (Utah 1989). To do so, Helmick must show that: (i) an error was made; (ii) the error should have been obvious to the trial court; and (iii) the error was harmful, so that in the absence of the error, a more favorable outcome was reasonably likely. *See State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). Because the independent testimony of John Boccia corroborated his brother's key admissions regarding the execution of the crime and Helmick's involvement, there was overwhelming evidence of Helmick's guilt and any error in admitting Montoya's testimony was harmless.[4] Additionally, the trial court's reasoning in denying the untimely motion to strike appears to have been entirely sound, inasmuch as the trial court noted that the testimony was not anticipated by either side, no objection under the criteria laid out in *Ramirez* was raised, and the function to be performed by application of the *Ramirez* criteria could not be effectively accomplished after Montoya testified before the jury.

## II.  GANG ENHANCEMENT

### A.  Failure to Include Notice of Enhancement in Information Charging Aggravated Burglary

¶ 10 Helmick argues that the trial court improperly enhanced his sentence for aggravated burglary because the amended information failed to give him notice that such enhancement might be imposed pursu-

---

4.  For the same reasons, Helmick's ineffective assistance of counsel claim as it relates to his trial counsel's failure to timely object to Monto-

ya's testimony because it lacked reliability cannot succeed.

ant to section 76–3–203.1 of the Utah Code. Under this section, "[t]he prosecuting attorney . . . shall cause to be subscribed upon the . . . information . . . in felony cases notice that the defendant is subject to the enhanced penalties provided under this section. The notice shall be in a clause separate from and in addition to the substantive offense charged." Utah Code Ann. § 76–3–203.1(2)(a).

¶ 11 The amended information in the record clearly states, in a clause separate from that charging aggravated burglary, that Helmick was subject to enhanced penalties. Therefore, we reject Helmick's claim of error and find that he was on notice that the trial court could impose an enhanced sentence on the aggravated burglary charge.

*B. Imposition of Enhanced Sentences on Aggravated Burglary and Aggravated Robbery Charges Based on Trial Court's Findings*

■ ¶ 12 Helmick next argues that the trial court improperly enhanced his sentences on the aggravated burglary and aggravated robbery charges because the judge, rather than the jury, made the requisite findings to support the enhancement under section 76–3–203.1 in violation of *State v. Lopes,* 1999 UT 24, 980 P.2d 191. With respect to the enhancement on the aggravated robbery charge, the State concedes that the trial court committed reversible error in enhancing Helmick's conviction because neither of the other two defendants entered guilty pleas to aggravated robbery. We agree. We therefore vacate the enhanced portion of Helmick's sentence for this charge.

■ ¶ 13 The State goes on to argue, however, that Helmick's enhanced sentence for the aggravated burglary conviction can be sustained, notwithstanding *Lopes,* because Boccia pled guilty to aggravated burglary and Deboer pled guilty to conspiracy to commit aggravated burglary, thus resulting in convictions that conclusively established the "in concert" element necessary for enhancement.

¶ 14 In *Lopes,* this court interpreted the requirements of the gang enhancement statute [5] holding that "since the statute creates a separate and new offense, each element must be found beyond a reasonable doubt by a *jury,* not the trial judge." *Id.* at ¶ 16 (emphasis added). It has become apparent that the application of *Lopes'* principles, especially to cases tried before its announcement, requires some flexibility. In *State v. Kohl,* 2000 UT 35, ¶¶ 28–31, 999 P.2d 7, and *State v. Veteto,* 2000 UT 62, ¶¶ 10–12, we held that it was error for the "in concert" enhancement element to have been found by the judge, but that the error was harmless because two co-defendants were found guilty in the same trial of identical charges by the jury that convicted the defendant. Also, although no case has yet raised the issue, it seems obvious that if a defendant properly elects a bench trial rather than a jury trial, the judge may impose the enhancement as part of the fact-finding process without running afoul of *Lopes.*

■ ¶ 15 We do not decide today the question of whether a trial judge could properly enhance the sentence of a defendant after a jury trial and conviction when two or more co-defendants have pled guilty to *identical* crimes. In light of our decision in *Lopes,* that question may never require our consideration. We do conclude, however, that it is not harmless error for a judge to rely on pleas to related, but not identical, offenses in imposing an "in concert" enhancement. The relationship between the jury function in con-

---

5. Utah Code Ann. § 76–3–203.1 states, in pertinent part:

   (1)(a) A person who commits any offense listed in Subsection (4) in concert with two or more persons is subject to an enhanced penalty for the offense as provided below.

   (b) "In concert with two or more persons" as used in this section means the defendant and two or more other persons participated as parties to the offense under Section 76–2–202.

   Utah Code Ann. § 76–2–202 (1999) states:

   Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

   To aid the reader, we cite the current version of section 76–2–202 and note that it has not been altered since its enactment in 1973.

victing defendants of the additional element required for the enhancement and the inferences that can properly be drawn by a judge from pleas to other crimes, even conspiracy or attempt, is simply too attenuated to satisfy the concerns we articulated in *Lopes.*

¶ 16 We conclude, moreover, that the enhancement statute itself precludes the course the State urges in this case. The statute states that the actors must have "participated as parties to *the* offense," meaning the offense that they committed "in concert" with each other, not some related offense. Utah Code Ann. § 76–3–203.1(1)(b) (emphasis added). If an offense for which a defendant is convicted differs from an offense that is the subject of a plea, that plea may not, as a matter of law, form the basis for the imposition of an enhanced sentence.

¶ 17 We therefore vacate the enhanced portion of Helmick's sentence for the aggravated burglary charge.[6]

### C. Failure to Sentence Defendant on Underlying Charges Before Enhancements

¶ 18 Finally, defendant claims that the trial court committed reversible error by failing to sentence him on the underlying aggravated burglary and aggravated robbery charges first, and only then imposing the gang enhancements, if appropriate. Under section 76–3–203.1, "[t]he enhanced penalties for offenses committed under this section are: ... (e) [i]f the offense is a first degree felony, the convicted person *shall* be sentenced to an enhanced minimum term of nine

years in prison." Utah Code Ann. § 76–3–203.1(3)(e) (1999) (emphasis added).

¶ 19 This statute expressly addresses the sentence the trial judge must impose once the gang enhancement has been found proper. Nowhere does it require the trial judge to impose a sentence first on the underlying charge, and only then on the gang enhancement. To the contrary, the statute provides that only one sentence should be imposed: an *enhanced* minimum sentence. Thus, we conclude that the trial court acted in accordance with the statute.

### CONCLUSION

¶ 20 The trial court did not commit plain error by not conducting a reliability hearing before permitting Montoya to testify at trial, and trial counsel was not ineffective for failing to raise a timely objection to the reliability of Montoya's testimony. Additionally, the information did give Helmick notice that the aggravated burglary charge was subject to enhancement. However, we vacate the enhanced penalties on the aggravated burglary and aggravated robbery charges and direct the entry of new sentences on those charges.

¶ 21 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM's opinion.

---

6.  In light of our vacation of the enhanced portion of Helmick's sentences on the aggravated robbery and aggravated burglary charges, we do not address Helmick's claim of ineffective assistance of counsel with respect to the enhanced sentences, nor his claim that the trial court improperly enhanced those sentences without sentencing him first on the underlying offenses.