2005 UT 88

STATE of Utah, Petitioner,

v.

The Honorable William W. BARRETT, Respondent.

James Kida Pauu and Inoke Vimahi, Real Parties in Interest.

Nos. 20040763, 20040963.

Supreme Court of Utah.

Dec. 5, 2005.

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Asst. Att'y Gen., Byron F. Burmester, Salt Lake City for petitioner.

Brent M. Johnson, Salt Lake City, for respondent.

Joan C. Watt, Vernice S. Trease, John D. O'Connell, Jr., Salt Lake City, for real parties in interest.

DURRANT, Justice:

¶ 1 To resolve these consolidated petitions for extraordinary relief, we must determine whether a district court's reduction, for sentencing purposes, of a first degree felony with a gang enhancement[1] to a second degree felony without an enhancement constitutes an impermissible two-degree reduction of the charged offense. If so, we must determine whether it is appropriate to utilize our extraordinary writ powers to nullify such a reduction. We conclude that a district court's removal of a gang enhancement is, in effect, a one-degree reduction of the charged offense. Therefore, reducing a first degree felony with a gang enhancement to a second degree felony without an enhancement amounts to a two-degree reduction from the level of the charged offense and is impermissible absent consent from the prosecutor. Because we conclude that such a reduction is outside the bounds of a district court's discretion, and because we consider this case to present a significant legal issue in need of resolution, we nullify the reductions at issue in this proceeding and direct the district court to enter new orders consistent with this opinion.

## BACKGROUND

¶ 2 The State of Utah initiated this original proceeding by filing two petitions for extraordinary relief, each claiming that the district court, when recording the convictions of James Pauu and Inoke Vimahi, impermissibly reduced the degree of the offense to which the defendants pleaded guilty. Pauu and Vimahi were initially charged with three first degree felonies: aggravated robbery, aggravated burglary, and theft. When charging the defendants, the State alleged that Pauu and Vimahi committed the offending acts in concert with two or more persons,

---

1. Utah's gang enhancement statute effectively increases the penalty applicable to certain enumerated crimes if the charged crime was committed in concert with two or more persons. Although the Utah Code refers to such an enhancement as an "in-concert" enhancement, Utah Code Ann. § 76–3–203.1 (2003), we have "previously referred to the statute under its commonly known name, and we will continue to do so for ease of reference," *State v. Lopes*, 2001 UT 85, ¶ 1 n. 2, 34 P.3d 762 (internal quotation marks omitted).

and were therefore subject to an enhanced penalty in relation to each proven offense as outlined in Utah's gang enhancement statute, *see* Utah Code Ann. § 76–3–203.1 (2003).

¶ 3 Before their trial commenced, however, both Pauu and Vimahi entered into plea agreements with the State. Pursuant to their plea agreements, Pauu and Vimahi pleaded guilty to aggravated robbery, a first degree felony, and also admitted that the crime was committed in concert with two or more persons, triggering the gang enhancement.[2] In exchange for the defendants' guilty pleas, the State dropped the aggravated burglary and theft charges.

¶ 4 After entering their pleas, Pauu and Vimahi each filed a motion with the district court requesting a one-degree reduction of the aggravated robbery charges for sentencing purposes. The defendants claimed that reducing the degree of the charged offenses from first degree felonies with gang enhancements to simple second degree felonies was appropriate under the circumstances. Both motions were made pursuant to Utah Code section 76–3–402, which grants sentencing judges the discretion to "enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly" if it would be "unduly harsh" to record the conviction as charged. *Id.* § 76–3–402(1).

¶ 5 The State opposed the motions, arguing that sentencing the defendants to the penalty applicable to the charged offense was not "unduly harsh" when the characters of the defendants and the violent nature of their actions were considered. Additionally, the State contended that the court was foreclosed from granting the defendants' request that the court reduce the first degree offenses with enhancements to second degree offenses without enhancements. Specifically, the State argued that such a reduction amounted to a two-degree departure from

the level of the charged offense, a reduction outside the bounds of the court's discretion absent consent from the prosecutor. *See id.* § 76–3–402(3). After considering the parties' arguments, the district court reduced Pauu's and Vimahi's offenses from first degree felonies with enhancements to second degree felonies without enhancements. Pauu and Vimahi subsequently received sentences corresponding to a second degree felony— specifically, one to fifteen years in prison.

¶ 6 Although the State felt the district court committed error by engaging in such a reduction, the State was unable to appeal the appropriateness of the district court's action, as at the time the challenged reductions were made, the Utah Code prevented the State from pursuing a direct appeal challenging the appropriateness of such reductions. *See id.* § 77–18a–1(2) (Supp.2004) (outlining specific situations where the prosecution may pursue a direct appeal).[3] Consequently, the State filed two petitions for extraordinary relief pursuant to rule 65B(d), claiming that the district court, by reducing first degree felonies with enhancements to second degree felonies without enhancements, violated the Utah Code's prohibition against two-degree reductions absent the approval of the prosecution. *See id.* § 76–3–402(3) ("An offense may be reduced only one degree under this section unless the prosecutor specifically agrees.... In no case may an offense be reduced ... by more than two degrees."). We consolidated the two petitions for the purposes of our review. We have jurisdiction pursuant to Utah Code section 78–2–2(2) (2002).

## STANDARD OF REVIEW

¶ 7 The parties to this proceeding have focused extensively, both during briefing and at oral argument, on identifying the standard of review applicable to this case.

---

**2.** In his brief before this court, Vimahi suggests that his guilty plea was defective because he did not adequately admit the facts underlying the charged gang enhancement. We express no opinion as to the adequacy of Vimahi's plea because the issue is not properly before us.

**3.** Section 77–18a–1 was amended after the State filed the present petitions for extraordinary re-

lief. As amended, the statute now allows the State to directly appeal a district court's reduction in the degree of the charged offense. Utah Code Ann. § 77–18a–1(3)(i) (Supp.2005). The parties to the present action concede that this amendment has no retroactive effect and therefore has no bearing on the resolution of the State's petitions.

In doing so, they have concentrated their efforts on elucidating an explanation of an apparent distinction drawn in our case law between cases in which extraordinary relief is available based upon a simple abuse of discretion by a lower court and cases in which extraordinary relief is available only if the lower court grossly and flagrantly abused its discretion. Because our jurisprudence in this area has led to much confusion, we take this opportunity to clarify our prior pronouncements regarding the scope and standard of review in rule 65B(d) extraordinary relief proceedings.[4]

¶ 8 This court's ability to grant extraordinary relief has its origins in the state constitution, which vests the state supreme court with "original jurisdiction to issue all extraordinary writs." Utah Const. art. VIII, § 3. The Utah Constitution also grants this court the ability to enact rules governing judicial procedure. *Id.* art. VIII, § 4. Pursuant to our rulemaking authority, we have promulgated rule 65B of the Utah Rules of Civil Procedure, which outlines the general mechanics of an extraordinary relief proceeding and designates the types of situations in which extraordinary relief may be attainable. *See* Utah R. Civ. P. 65B.

¶ 9 Rule 65B provides that, "[w]here no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief on any of the grounds" identified in the rule. *Id.* 65B(a). The grounds for relief relevant to the present dispute are enumerated in subsection (d) of rule 65B, which addresses the wrongful use of judicial authority and the failure to perform a duty. *Id.* 65B(d). Specifically, the relevant portion of rule 65B states as follows:

Appropriate relief may be granted: (A) where an inferior court ... exceeded its jurisdiction or abused its discretion; (B) where an inferior court ... has failed to perform an act required by law as a duty of office, trust or station; (C) where an inferior court ... has refused the petitioner the use or enjoyment of a right or office to which the petitioner is entitled. ...

*Id.* 65B(d)(2). The rule goes on to define the appropriate scope of review when a court is confronted with a petition for an extraordinary writ challenging a lower court's action or inaction, stating that "[w]here the challenged proceedings are judicial in nature, the court's review shall not extend further than to determine whether the respondent has regularly pursued its authority." *Id.* 65B(d)(4). To determine the practical effect of the rule's terms, a brief history and analysis of the rule is necessary.

¶ 10 Our decision in *Renn v. Utah State Board of Pardons,* 904 P.2d 677 (Utah 1995), provides a thorough examination of the origins of rule 65B and identifies the concerns the rule was designed to address. Specifically, in *Renn* we discussed in some detail the common law writs of certiorari and mandamus and acknowledged that rule 65B subsumed those writs. 904 P.2d at 682. We noted that, "[w]ith the promulgation of Rule 65B of the Utah Rules of Civil Procedure, the common law forms and procedures for extraordinary writs were abolished in keeping with modern concepts of pleading and practice. ..." *Id.; see also* Utah R. Civ. P. 65B(a) ("There shall be no special form of writ."). As within the rules of civil procedure, the movement toward simplification of the writ process also led to a revision of the state constitution, which at one time listed each type of writ that was within this court's

4. Rule 65B of the Utah Rules of Civil Procedure abolished common law forms and pleadings for extraordinary writs but did not diminish the availability of extraordinary relief. *Renn v. Utah State Bd. of Pardons,* 904 P.2d 677, 682 (Utah 1995). Currently, habeas corpus relief is largely available through rules 65B(b) and 65C. *See* Utah R. Civ. P. 65B advisory committee's note ("Paragraph (b) ... governs all petitions claiming that a person has been wrongfully restrained of personal liberty other than those specifically governed by paragraph [sic] Rule 65C."). Relief formerly granted under writs of mandamus or

certiorari is generally available through rule 65B(d). *Renn,* 904 P.2d at 683 (noting that "[r]ule 65B(e) [subsection (d) in the current rule] includes relief that was available at common law by writs of certiorari and mandamus"). The text of rule 65B(d) contains an abuse-of-discretion component, while the text of rule 65B(b) does not. Our analysis in this case is confined to petitions properly brought under rule 65B(d). *See Renn,* 904 P.2d at 681 ("We ... look to the substance of the action and the nature of the relief sought in determining the true nature of the extraordinary relief requested.").

jurisdiction to grant, but which was amended in 1984 to read simply that the supreme court has jurisdiction to issue "all extraordinary writs." *See* Judicial Article Revision, 1984 Utah Laws 2d spec. sess. 268, 269.

¶ 11 Although the practice of specifically listing each available common law writ has been abandoned, *Renn* makes clear that the remedies provided by those writs remain available. 904 P.2d at 682. As a result, rule 65B can be thought of as a repository of all the extraordinary writs that, in the past, were envisioned as separate and distinct proceedings. In *Renn*, we concluded that the portion of rule 65B covering the wrongful use of judicial authority or the failure to comply with a duty is properly conceived as including the "relief that was available at common law by writs of certiorari and mandamus," *id.* at 683, which were commonly used to review the actions of a lower tribunal. The fact that rule 65B has subsumed the common law writs does not, however, change the reality that "a court must look to the nature of the relief sought, the circumstances alleged in the petition, and the purpose of the type of writ sought in deciding whether to grant extraordinary relief." *Id.*

¶ 12 Both the State and the defendants argue that the outcome of the present case is controlled by our determination of whether the district court abused its discretion by reducing the degree of the defendants' offenses in the manner it did. But as noted above, the State argues that extraordinary relief is warranted if we conclude that the district court abused its discretion, while the defendants contend that such relief is warranted only if we conclude that the district court committed a gross and flagrant abuse of discretion. Before addressing the parties' disagreement on this question, we must first discuss the nature of the action being challenged in this proceeding.

¶ 13 To begin with, no party to this proceeding alleges that the district court knowingly violated the Utah Code by reducing the degree of the defendants' offenses from first degree felonies with enhancements to second degree felonies without enhancements. Further, the State has not asserted that the district court acted in an otherwise rogue fashion. Rather, the State maintains that the district court incorrectly interpreted the relevant provisions of the Utah Code and that this misinterpretation led the court to take an action contrary to the statutory scheme.

¶ 14 We have consistently held that the proper interpretation of a statute is a question of law that should be reviewed for correctness. *See Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 17, 104 P.3d 1242. Consequently, it would appear reasonable to assume that, in the present case, we should undertake a correctness review and grant the State relief if the district court misinterpreted the Utah Code. Neither the State nor the defendants have argued that such a standard is applicable here, however. Rather, both parties argue that extraordinary relief is only appropriate if the district court abused its discretion. This position is entirely consistent with the language of rule 65B, which provides that relief can be granted if a lower court "exceeded its jurisdiction or abused its discretion." Utah R. Civ. P. 65B(d)(2)(A). As a result, we must determine whether a lower court abuses its discretion when it makes a mistake of law.

¶ 15 It could certainly be argued that any mistake of law made by a court is, by definition, an abuse of discretion. For example, in *Koon v. United States*, the United States Supreme Court, when articulating the standard of review applicable to a district court's decision to depart from sentencing guidelines, stated that

[a] district court by definition abuses its discretion when it makes an error of law. That a departure decision . . . may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled *de novo* while other parts are labeled an abuse of discretion. The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.

518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (internal citations omitted) *superseded by statute on other grounds as stated in United States v. Stultz*, 356 F.3d 261, 264 (2d. Cir.2004); *Freeman v. Case Corp.*, 118

F.3d 1011, 1014 (4th Cir.1997) ("[A]n error of law constitutes an abuse of discretion.").

¶ 16 On the other hand, it seems that one must have discretion before one is able to abuse that discretion. *See Jackson Constr. Co. v. Marrs,* 2004 UT 89, ¶ 8, 100 P.3d 1211 (holding that while a denial of a motion to vacate is typically reviewed for an abuse of discretion, when the motion is based on a claim that the court lacks jurisdiction, the question becomes one of law); *State v. Petersen,* 810 P.2d 421, 425 (Utah 1991) ("[T]rial courts do not have discretion to misapply the law. Therefore, legal determinations concerning the proper interpretation of the statute which grants the trial court discretion are reviewed for correctness." (footnote omitted)).

¶ 17 As a general matter, we agree with the proposition that the abuse-of-discretion standard of review will at times necessarily include review to ensure that no mistakes of law affected a lower court's use of its discretion.[5] This case presents such a situation, as determining the breadth of the district court's discretion entails interpreting the statutory language granting the court the discretion to lower the degree of a defendant's offense for sentencing purposes.

¶ 18 Nevertheless, the defendants argue that, even if the district court did misinterpret the relevant statutory provisions, extraordinary relief is not available to correct simple mistakes of law because such mistakes do not amount to a gross and flagrant abuse of discretion. This argument is primarily grounded in our decision in *Renn,* 904 P.2d 677, and two court of appeals decisions issued in extraordinary writ proceedings, *State v. Stirba,* 972 P.2d 918 (Utah Ct.App. 1998), and *Utah County v. Alexanderson,* 2003 UT App 153, 71 P.3d 621, *vacated,* 2005 UT 67. A brief discussion of each case is necessary to understand the defendants' argument.

¶ 19 In *Renn,* a prisoner attempted to challenge the decision of the board of pardons "to postpone the hearing at which his parole release date is set." 904 P.2d at 682. At the outset of our consideration of Renn's petition, however, we were forced to grapple with a provision of the Utah Code that immunized decisions of the board of pardons from judicial review. *Id.* at 683. Despite the presence of the statute foreclosing judicial review, we relied upon this court's constitutional authority to issue extraordinary writs as a basis for reviewing Renn's petition for extraordinary relief. *See id.* at 680–84. In an attempt to reconcile our review of Renn's petition with the presence of the statutory prohibition against judicial review of board of pardons decisions, we stated that

> [b]ecause the legislature has directed that there be no right of appeal from Board of Pardons actions, [extraordinary relief] may not be used as a substitute for a statutory appeal. Nevertheless, where there is a gross and flagrant abuse of discretion and fundamental principles of fairness are flouted, a court may, giving appropriate deference to legislative policy and the extraordinarily difficult duties of the Board of Pardons, intervene to correct such abuses by means of an appropriate extraordinary writ.

*Id.* at 683–84 (citation omitted).

¶ 20 In *Stirba,* the court of appeals concluded that a district court had improperly interpreted the Utah Code in concluding that a crime victim was not entitled to additional restitution if that victim had already received

---

5. There may be situations in which a court has misinterpreted a statute defining the scope of its discretionary power but that misinterpretation does not result in a technical abuse of discretion. For example, a statute may grant a court the discretion to choose one of two different courses, (a) or (b), to follow when presented with a certain fact scenario. If the fact scenario does not meet the statutory criteria, the court may only be empowered to pursue course (a). Therefore, it is possible that a court could misinterpret the relevant statute in such a manner as to mistakenly believe that it is faced with a situation in which either of the two courses, (a) or (b), may be pursued. But if the court chooses course (a), an option available under both the correct interpretation of the statute and the incorrect interpretation, the court has committed an error of law (through misinterpretation), but yet has not exceeded the bounds of discretion granted by the proper interpretation of the statute. In such a situation, corrective appellate action may be warranted to enable the lower court to exercise its discretion with the proper legal boundaries in mind.

a recovery from a personally held insurance policy. 972 P.2d at 923. Despite identifying this mistake of law, the court of appeals declined to grant relief, and, relying on *Renn,* stated that "a simple mistake of law does not qualify as the kind of gross and flagrant abuse of discretion necessary for [an extraordinary] writ to issue." *Id.* Although *Stirba* is not clear on this point, it apparently interpreted our decision in *Renn* as holding that, at least in situations in which the legislature has precluded the right to pursue ordinary appellate channels, extraordinary relief is appropriate only if the lower court grossly and flagrantly abused its discretion.

¶ 21 In *Alexanderson,* the court of appeals took this line of reasoning one step further and expressly stated what *Stirba* implied. Specifically, *Alexanderson* read *Stirba* as prohibiting extraordinary relief in any rule 65B proceeding, whether a statutory prohibition on appeal is present or not, absent a showing that the lower tribunal committed a gross and flagrant abuse of discretion. *Alexanderson,* 2003 UT App 153, ¶ 8 n. 5, 71 P.3d 621.

¶ 22 Further complicating this state's case law addressing extraordinary relief is the reality that this court has arguably varied between abuse-of-discretion and gross-and-flagrant-abuse-of-discretion review standards when considering petitions for extraordinary relief. *Compare Kawamoto v. Fratto,* 2000 UT 6, ¶¶ 1 n. 1, 7, 994 P.2d 187 (reviewing for an abuse of discretion even though a statutory abrogation of the right to appeal existed) *with Renn,* 904 P.2d at 683–84 (applying gross-and-flagrant-abuse-of-discretion standard due to the presence of a statutory prohibition on judicial review). *See Panos v. Third Jud. Dist. Ct.,* 2004 UT 87, ¶ 16, 103 P.3d 695 (questioning appropriateness of the review undertaken in *Kawamoto* ).

¶ 23 To resolve the confusion surrounding the appropriate standard of review in the rule 65B(d) extraordinary relief context, we will first make clear the discretionary nature of that relief. Unlike a party filing a direct appeal, a petitioner seeking rule 65B(d) extraordinary relief has no right to receive a remedy that corrects a lower court's mishandling of a particular case. Rather, whether relief is ultimately granted is left to the sound discretion of the court hearing the petition. *See* Utah R. Civ. P. 65B(d)(2) ("Appropriate relief *may* be granted ... where an inferior court ... abused its discretion ...." (emphasis added)). Because a party petitioning for rule 65B(d) extraordinary relief is not entitled to receive relief, even if that party successfully establishes that a lower court abused its discretion, such relief will be, naturally, more difficult to obtain.

¶ 24 Indeed, in a particular case, relief may very well be available under the terms of rule 65B(d) itself—which states that a petitioner has established adequate grounds for relief upon showing that a lower court "abused its discretion," Utah R. Civ. P. 65B(d)(2)(A)—but a court may nevertheless withhold relief. In sum, if a petitioner is able to establish that a lower court abused its discretion, that petitioner becomes eligible for, but not entitled to, extraordinary relief. A court faced with a petition for extraordinary relief will consider multiple factors when determining whether or not to grant the relief requested in the petition. For example, factors such as the egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity of the consequences occasioned by the alleged error, and additional factors, may all affect the court's decision to grant or withhold relief. The exercise of the court's discretion when deciding whether to grant rule 65B(d) extraordinary relief is akin to this court's exercise of its certiorari review powers. Rule 46 of the Utah Rules of Appellate Procedure states that "[r]eview by a writ of certiorari is not a matter of right, but of judicial discretion and will be granted only for special and important reasons." Utah R.App. P. 46(a). The rule goes on to provide a list of factors "neither controlling nor wholly measuring the Supreme Court's discretion," but which "indicate the character of reasons that will be considered" when deciding whether to grant certiorari review. *Id.* Among the considerations identified is whether a panel of the court of appeals "has rendered a decision that has so far departed from the accepted and usual course of judi-

cial proceedings ... as to call for an exercise of the Supreme Court's power of supervision." *Id.* 46(a)(3).

¶ 25 *Renn* serves as an example of the type of considerations that this court will examine when deciding whether to grant rule 65B(d) extraordinary relief. In *Renn*, our recognition that the legislature had adopted a policy foreclosing judicial review, combined with our assessment that the board of pardons is charged with an extraordinarily difficult task, led us to conclude that a substantial violation of rights was necessary before the court system should interfere. 904 P.2d at 683. In *Renn*, the egregiousness of the alleged error was a factor in our analysis addressing whether our entry into the fray was warranted in order to grant Renn relief from the alleged error. But as noted above, the egregiousness of the alleged error is only one of multiple factors bearing on the decision to grant extraordinary relief. After all, a simple mistake of law or a simple abuse of discretion can have dramatic consequences, and it would be a disservice to this state for this court to adopt a standard of review so stringent as to foreclose the possibility of remedying such an error. Consequently, although a petitioner seeking extraordinary relief establishes adequate grounds for the granting of that relief upon showing that the lower court abused its discretion, this court will weigh the various interests implicated by the proceeding and the potential consequences of judicial action or inaction before deciding whether to exercise its discretion by granting extraordinary relief.

¶ 26 Given the above discussion, it is incorrect to state that a petitioner seeking rule 65B(d) extraordinary relief must establish a gross and flagrant abuse of discretion before extraordinary relief can be granted. While the egregiousness of the alleged error is a factor that should be considered when the court reviewing the petition assesses the propriety of exercising its discretion to grant relief, extraordinary relief may be granted in situations where a simple abuse of discretion has occurred. This approach is consistent with the text of rule 65B(d) itself, which makes no mention of gross and flagrant abuses of discretion. In sum, rule 65B(d)

extraordinary relief is available upon a showing that the lower court abused its discretion, and a mistake of law may constitute an abuse of discretion. A petitioner need not show a gross and flagrant abuse of discretion in order to establish adequate grounds for this relief, but the egregiousness of the alleged error may be a factor the reviewing court considers when making its discretionary decision to grant or deny relief. Having outlined the appropriate standard of review, we now turn to the merits of this case.

## ANALYSIS

¶ 27 At issue in these consolidated cases is whether the district court's reduction of the defendants' first degree felonies with enhancements to second degree felonies without enhancements amounted to an abuse of discretion. The State contends that the decreases in question constituted two-degree reductions, which are prohibited by the Utah Code absent consent from the prosecutor. We agree.

¶ 28 To determine whether the reductions undertaken by the district court were permissible, we must interpret two sections of the Utah Code. The first provision grants judges the discretion to reduce the degree of the charged offense "to the next lower degree" for sentencing purposes if recording the conviction as charged would be "unduly harsh." Utah Code Ann. § 76–3–402 (2003). The second provision outlines the nature and effect of a gang enhancement. *Id.* § 76–3–203.1.

¶ 29 When interpreting statutes, this court first looks to the plain language. *Savage v. Utah Youth Vill.*, 2004 UT 102, ¶ 18, 104 P.3d 1242. "We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *C.T. ex rel. Taylor v. Johnson*, 1999 UT 35, ¶ 9, 977 P.2d 479 (internal quotation marks omitted). Furthermore, we "read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592. Other interpretive tools are not needed

in analyzing the statute when the language of the statute is plain. *Adams v. Swensen*, 2005 UT 8, ¶ 8, 108 P.3d 725. But "[i]f we find the provision ambiguous ... we then seek guidance from the legislative history and relevant policy considerations." *State v. Ostler*, 2001 UT 68, ¶ 7, 31 P.3d 528. Having articulated the proper method of interpretation, we now turn to the statutes at hand.

¶ 30 We commence our analysis by examining section 76–3–402 of the Utah Code. Section 76–3–402 allows a sentencing judge, after reviewing "the nature and circumstances of the offense" and "the history and character of the defendant," to reduce the degree of the charged offense to the "next lower degree of offense" when the penalty associated with the charged offense would be "unduly harsh." Utah Code Ann. § 76–3–402(1). Although this statute grants sentencing judges discretion to reduce the degree of the charged offense, it also limits that discretion, providing that "[a]n offense may be reduced only one degree under this section unless the prosecutor specifically agrees in writing or on the court record that the offense may be reduced two degrees. In no case may an offense be reduced under this section by more than two degrees." *Id.* § 76–3–402(3).

¶ 31 The offense reduction statute is straightforward. If a sentencing judge is convinced that the penalty applicable to the charged offense is unduly harsh under the circumstances, the judge can reduce the degree of the offense when recording the conviction. But the presence of a gang enhancement complicates this process. Therefore, we now turn to the language of the gang enhancement statute and discuss the manner in which it operates.

¶ 32 The gang enhancement statute mandates that the level of the charged offense be increased by one degree if the underlying offense is committed in concert with two or more persons. *Id.* § 76–3–203.1. Specifically, the enhancement scheme provides as follows:

The enhanced penalty for a:

(a) class B misdemeanor is a class A misdemeanor;

(b) class A misdemeanor is a third degree felony;

(c) third degree felony is a second degree felony;

(d) second degree felony is a first degree felony; and

(e) first degree felony is an indeterminate prison term of not less than nine years and which may be for life.

*Id.* § 76–3–203.1(3).

¶ 33 In this case, both Pauu and Vimahi pleaded guilty to aggravated robbery, a first degree felony, with a gang enhancement. According to the enhancement scheme outlined above, both defendants were to be sentenced to no fewer than nine years to life in prison. *Id.* But the district court exercised its discretion to lower the degree of the charged offenses and reduced those offenses to second degree felonies, imposing prison terms of one to fifteen years. *See id.* § 76–3–203(2) (outlining sentencing term applicable to second degree felonies). The State argues that the district court only had discretion to reduce the charged offenses to first degree felonies without enhancements and, therefore, the district court exceeded the bounds of its discretion when it reduced the charged first degree felonies with enhancements to second degree felonies without enhancements.

¶ 34 According to the State, this conclusion is inescapable because the district court did not merely reduce the charged offenses to "the next lower degree of offense," but actually reduced the charged offenses by two degrees. The State explains its position by articulating a three-step process that the district court must have followed when reducing the degree of the defendants' offenses. First, the district court reduced the charged offenses by one degree, lowering the enhanced first degree felonies to enhanced second degree felonies. Second, the enhancement operated to raise the enhanced second degree felonies to first degree felonies without enhancements. Third, the district court lowered the first degree felonies to second degree felonies. According to the State, the district court was not empowered to undertake the third step because it had already exercised its discretion to lower the charged offenses by one degree.

¶ 35 In contrast, the defendants argue that the gang enhancement statute does not increase the degree of a charged offense, but merely imposes a harsher penalty for the charged offense. Consequently, under the defendants' theory, an enhanced first degree felony is a first degree felony with an increased penalty, and the district court is empowered to reduce that felony to a second degree felony without an enhancement. The defendants find support for their position in the language of the gang enhancement statute, which seems to acknowledge a distinction between penalties and offenses, listing "penalties" in subsection (3) and "offenses" to which those penalties are applicable in subsection (4). *Id.* § 76–3–203.1(3) to (4).

¶ 36 Despite the presence of some textual support for the defendants' interpretation, their approach is flawed because it disregards the plain language used in outlining the enhancement scheme, which literally raises the degree of a charged offense in order to effect the enhanced penalty. *See id.* § 76–3–203.1(3) ("The enhanced penalty for a ... second degree felony is a first degree felony...."). The defendants would like the statute to state that the enhanced penalty for a second degree felony is the penalty applicable to a first degree felony. But the statute is not written in that manner. Defendants fail to recognize that the penalty provided by the enhancement statute is not an increased sentence, but an elevation of the degree of the charged offense, which ultimately results in an increased sentence. The legislature could certainly have provided increased penalties for crimes committed in concert with two or more persons by simply listing the penalty it desired to impose instead of raising the degree of the charged offense to effect an increased punishment. The plain language of the statute, however, reveals that the legislature did not choose to pursue such a course. *See id.*

¶ 37 The defendants argue, however, that the legislature did, in fact, pursue such a course in designating the appropriate enhancement when the underlying crime is a first degree felony. In support of this position, the defendants again point to the language of the statute, which, as a general matter, expressly lists the next higher degree of offense as the appropriate penalty to impose, but which merely increases the applicable prison term when the underlying offense is a first degree felony. *Compare id.* § 76–3–203.1(3)(d) (The enhanced penalty for a "second degree felony is a first degree felony.") *with id.* § 76–3–203.1(3)(e) (The enhanced penalty for a "first degree felony is an indeterminate prison term of not less than nine years and which may be for life.").

¶ 38 Adopting the defendants' interpretation would lead to anomalous treatment of first degree felons under the enhancement scheme. Specifically, under the defendants' interpretation of the statute, defendants who are convicted of enhanced first degree felonies are placed on the same footing as defendants convicted of simple first degree felonies because both categories of defendants could benefit from a discretionary reduction to simple second degree felonies. There is nothing in the language of the statute that indicates that the legislature intended such a result. Rather, the statute illustrates the Legislature's desire to increase penalties for certain crimes committed in concert with two or more persons and its chosen method to accomplish that goal: raising the degree of the underlying offense in such situations.

¶ 39 That the Legislature did not intend to place defendants who are convicted of a first degree felony with an enhancement and defendants who are convicted of a first degree felony without an enhancement on equal footing is apparent when the general manner in which the statute operates is analyzed. If a defendant is convicted of an enhanced crime, it is undisputed that the net effect of a one-degree reduction for sentencing purposes is the imposition of the sentence appropriate for the underlying crime, so long as that crime is classified anywhere from a class B misdemeanor to a second degree felony. The enhancement and reduction statutes, in effect, cancel each other out. For example, a third degree felony that is enhanced results in a second degree felony, which, when reduced, becomes a third degree felony. Yet, under the defendants' interpretation, the enhancement and reduction statutes would fail to cancel each other out when the underlying

crime is a first degree felony. This is the case as, according to the defendants, the enhancement statute does not raise the degree of the crime when the underlying offense is already a first degree felony. If the defendants' position is accepted, in situations in which an underlying offense is a first degree felony, the district court would be empowered to effectively remove the enhancement and lower the degree of the underlying offense.

¶ 40 We are convinced, however, that under the correct reading of the statute an enhanced first degree felony is a crime of a higher degree than a simple first degree felony. Equating an enhanced first degree felony with a crime of a higher degree alleviates the anomalous results discussed above and brings clarity to the proper implementation of the statutory scheme. Such an approach is also consistent with our case law addressing enhancements.

¶ 41 For example, in *State v. Lopes*, we determined that a previous version of the gang enhancement statute was unconstitutional because it allowed a judge to serve as a factfinder when determining whether the underlying crime was committed "in concert" with other individuals. 1999 UT 24, ¶ 17, 980 P.2d 191. As a predicate to that conclusion, we initially determined that, by enacting the gang enhancement statute, the legislature had essentially created a new offense and that every element of that offense must be proven to a jury beyond a reasonable doubt. *Id.* ¶¶ 15, 17. Specifically, we stated that the legislature, "[i]n essence, . . . created a specific new crime or a crime of a higher degree." *Id.* ¶ 15.

¶ 42 In *Lopes*, we also analogized the gang enhancement statute to Utah's firearm enhancement statute, as then in effect, stating that

the legislature, by enacting the firearm enhancement, . . . increased the degree of the crime by establishing a separate set of elements that, if proven, warranted a high-

er punishment. . . . [W]hile the State did not need to separately charge the enhancement as a crime, it did need to prove each element, including the defendant's use of a firearm, beyond a reasonable doubt because the crime was increased as to degree by the presence of the firearm.

*Id.* ¶ 12. *Lopes* concluded "that the gang enhancement statute creates a new and separate offense." *Id.* ¶ 22.

¶ 43 After our decision in *Lopes*, the legislature amended the gang enhancement statute to conform with our holding. Specifically, the legislature struck the provision that declared that "[t]his section does not create any separate offense but provides an enhanced penalty for the primary offense," and added a requirement that the underlying facts supporting the charged enhancement must be proven to the factfinder beyond a reasonable doubt. *See* Act of Feb. 29, 2000, ch. 214, sec. 2, § 76–3–203.1, 2000 Utah Laws 717, 717–18.

¶ 44 Our conclusion that a gang enhancement operates to raise the degree of an underlying offense is further strengthened by our decision in *State v. Helmick*, 2000 UT 70, 9 P.3d 164. In that case, we determined that the gang enhancement statute contemplates only one sentence being imposed, not a sentence for the underlying crime and a subsequent enhancement of that sentence. *Id.* ¶ 19. In reaching this conclusion, we stated that the

statute expressly addresses the sentence the trial judge must impose once the gang enhancement has been found proper. Nowhere does it require the trial judge to impose a sentence first on the underlying charge, and only then on the gang enhancement. To the contrary, the statute provides that only one sentence should be imposed: an *enhanced* minimum sentence.

*Id.*[6]

¶ 45 As in the present case, *Lopes* and *Helmick* both involved an underlying crime

---

6. Subsequent to our decision in *Helmick*, the Legislature amended the gang enhancement statute once again, striking language referring to the enhancement of a first degree felony as an "enhanced minimum term." *See* Act of Feb. 21,

2001, ch. 209, sec. 2, § 76–3–203.1, 2001 Utah Laws 990, 993. As amended, the statute simply designates that the enhanced penalty for a first degree felony "is an indeterminate prison term

classified as a first degree felony as well as a gang enhancement. Our discussions in *Lopes* and *Helmick* lend considerable support to our conclusion that the enhancement scheme considers an enhanced first degree felony a crime of a higher degree than a simple first degree felony.

¶ 46 Absent any reduction in the degree of their offenses, Pauu and Vimahi should have been sentenced to prison terms of nine years to life, the penalty applicable to enhanced first degree felonies. But the district court used its discretion to reduce the charged offenses by one degree. Under the proper interpretation of the relevant statutes, the defendants' offenses should have been reduced to simple first degree felonies with accompanying prison terms of five years to life. Utah Code Ann. § 76–3–203(1). The district court abused its discretion by reducing those offenses to simple second degree felonies.

## CONCLUSION

¶ 47 We conclude that the district court abused its discretion when it reduced defendants' first degree felonies with gang enhancements to second degree felonies without enhancements. An enhanced first degree felony is, for the purposes of the enhancement statute, a crime of a higher degree than a first degree felony. Because we conclude that the district court abused its discretion in this matter, the State has established adequate grounds for extraordinary relief. Given the significant nature of the legal question presented by these consolidated petitions, we exercise our discretionary authority to grant such relief. We therefore vacate the orders reducing the degree of the defendants' offenses and direct the district court to enter orders consistent with this opinion.

¶ 48 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

not less than nine years and which may be for life." *Id.*