*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 41**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH, in the interest of A.T. and J.B.J.,
persons under eighteen years of age,

*Petitioner.*

L.G.,
*Respondent,*

*v.*

STATE OF UTAH,
*Respondent.*

No. 20130863
Filed March 27, 2015

On Certiorari to the Utah Court of Appeals

Fourth Juvenile, Provo Dep't
The Honorable Suchada P. Buzzelle
No. 20120329

Attorneys:

Martin N. Olsen, Midvale, Dixie A. Jackson, Salt Lake City,
for petitioner Guardian ad Litem

D. Grant Dickinson, Provo, for respondent L.G.

Sean D. Reyes, Att'y Gen., John M. Peterson, Asst. Att'y Gen.,
Salt Lake City, for respondent State of Utah

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUDGE MAUGHAN joined.

JUSTICE NEHRING did not participate herein;
DISTRICT JUDGE PAUL G. MAUGHAN sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1    On certiorari, the Guardian ad Litem challenges the court of appeals' holding that a juvenile court is required to order reasonable reunification services to an incarcerated parent unless it determines on the record that those services would be detrimental to the child.  The Guardian ad Litem asserts that the juvenile court is required to consider whether reunification services would be detrimental only when it has established a primary permanency goal for the child that implicates reunification with the incarcerated parent.  We agree.  If a child's primary permanency goal does not contemplate reunification with a parent, the court need not order reunification services.

## BACKGROUND

¶ 2    L.G. (Mother) is the biological mother of A.T. and J.B.J. (Children). J.B. (Father) is the biological father of J.B.J. and has acted as a stepfather to A.T.   In 2011, Mother was convicted of drug offenses and sentenced to one to fifteen years in the Utah State Prison.  Mother arranged for Father to care for the Children during her incarceration.  However, Father was subsequently arrested for possession of drugs and drug paraphernalia.  The Utah Division of Child and Family Services (DCFS) removed the Children from Father's care and placed them with a foster family.

¶ 3    The State filed a Petition for Custody, which was adjudicated as to both parents. Following an adjudication of neglect, the juvenile court held a dispositional hearing.  At the hearing, the juvenile court established a primary permanency goal of reunifying the Children with Father.  Because Father was the custodial parent, the juvenile court approved a service plan for him that included reunification services.   The court did not, however, order that reunification services be provided to Mother.   Mother was represented by counsel and did not request services or inclusion in the primary permanency goal.

¶ 4    Shortly thereafter, Father failed to comply with his case plan and was incarcerated.   DCFS therefore requested that reunification services to Father be terminated.   Following a permanency hearing, the juvenile court established a primary permanency goal of adoption and terminated Father's services. Mother did not object to the change in the primary permanency goal.

¶ 5 During the termination hearing, Mother argued that her parental rights could not be terminated because DCFS had not provided her reasonable reunification services. The juvenile court rejected her argument, noting that Father was the parent entitled to reunification services because he was the custodial parent. The juvenile court also found that both Mother and Father were "wholly unfit and unable to care for the children," and that there was no likelihood that either parent would be able to begin caring for the Children in a reasonable time frame. The juvenile court then terminated both Mother's and Father's parental rights.

¶ 6 Mother appealed the termination of her parental rights. The court of appeals reversed the denial of reasonable reunification services to Mother and the termination of her parental rights and held that Utah Code section 78A-6-312(24)(a) "instructs the court to make and explain a judicial determination about whether services would be detrimental to the minor after consideration of the factors" enumerated in subsection (24)(b). *L.G. v. State (State ex rel. A.T.),* 2013 UT App 184, ¶¶ 14, 16, 307 P.3d 672. The court of appeals did not address Mother's additional argument that the juvenile court erred in failing to order an independent investigation into allegations of child abuse by the Children's foster parents. *Id.* ¶ 7 n.3. The Guardian ad Litem appeals. We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶ 7 On certiorari, we review the decision of the court of appeals for correctness. *Harold Selman, Inc. v. Box Elder Cnty.,* 2011 UT 18, ¶ 15, 251 P.3d 804. We review questions of statutory construction for correctness. *Anderson v. United Parcel Serv.,* 2004 UT 57, ¶ 7, 96 P.3d 903.

## ANALYSIS

### I. MOTHER'S ARGUMENT WAS CONSIDERED BY THE JUVENILE COURT

¶ 8 The Guardian ad Litem first argues that the court of appeals erred by failing to address whether Mother preserved her claim that the juvenile court did not comply with the requirements of section 78A-6-312(24) of the Utah Code. Specifically, it asserts that Mother's request for reunification services was untimely because she did not raise it at the dispositional hearing when the primary permanency goal was established. We are not persuaded and conclude that Mother's argument concerning reunification services was sufficiently preserved.

¶ 9   "We generally will not consider an issue unless it has been preserved for appeal." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828.  To be preserved for appeal, the issue must have been "presented to the trial court in such a way that the trial court has an opportunity to rule on [it]." *J.M.W. v. T.I.Z. (In re Adoption of Baby E.Z.)*, 2011 UT 38, ¶ 25, 266 P.3d 702 (internal quotation marks omitted).

¶ 10   Mother presented her argument to the juvenile court and the juvenile court ruled on it.  The juvenile court noted, "[Mother] argued at trial that her parental rights should not be terminated because DCFS has failed to make reasonable efforts to provide her reunification services."  The juvenile court reasoned that Mother's argument failed because the permanency goal set by the court was for reunification with Father, not her, and therefore he was the parent entitled to reasonable services from DCFS.

¶ 11   The Guardian ad Litem contends that Mother raised the issue too late because a parent is required to bring a request for reasonable reunification services at the dispositional hearing when the primary permanency goal is established.  The Guardian ad Litem also argues that allowing Mother to raise her claim after the dispositional hearing creates an absurd result by depriving "the juvenile court of an opportunity to rule on the issue" and depriving parents of "precious time to engage in services."

¶ 12   We disagree and conclude that Mother's request for reunification services was brought in a timely manner.  The Guardian ad Litem's argument is inconsistent with what the statute envisions and what our precedent requires.  Under Utah Code section 78A-6-507(3)(a), during a termination hearing the juvenile court is required to find that DCFS "made reasonable efforts to provide [reunification] services before the court may terminate the parent's rights."  Thus, the statute provides that a parent may raise DCFS' failure to provide reasonable reunification services at the termination hearing itself.

¶ 13   Similarly, under our case law, Mother was free to object to the lack of reunification services at the termination hearing because the earlier dispositional hearing was neither final nor appealable.  *See A.O. v. State (State ex rel. K.F.)*, 2009 UT 4, ¶ 37, 201 P.3d 985.  A dispositional or permanency hearing "does not always result in an order that affects the permanent status of the child." *C.M.F. v. State (State ex rel. A.F.)*, 2007 UT 69, ¶ 6, 167 P.3d 1070.  In many cases, these hearings "result in orders that merely set a direction for the remainder of the proceedings," *id.*, and the parties are still able to

regain custody "by taking steps to show fitness and petitioning the court for custody at any time prior to termination of [their] parental rights," *id.* ¶ 8. Thus, Mother could have petitioned the court for reunification services up until termination of her parental rights.[1] We therefore conclude that Mother's request for reunification services was timely and was accordingly preserved for appeal. We now turn to the Guardian ad Litem's argument that Mother was not entitled to reunification services.

## II. REUNIFICATION SERVICES FOR AN INCARCERATED PARENT NEED ONLY BE CONSIDERED WHEN REUNIFICATION WITH THAT PARENT IS THE JUVENILE COURT'S PERMANENCY GOAL

¶ 14 Mother argues that the juvenile court was required to provide reasonable reunification services to her before it could terminate her parental rights. In so arguing, she relies on Utah Code section 78A-6-312(24)(a), which provides that in the event a parent is incarcerated, the juvenile court "shall order reasonable services unless it determines that those services would be detrimental to the minor."[2] Mother contends the juvenile court erred when it withheld

---

[1] The Guardian ad Litem may be correct that the dispositional hearing is the most prudent and effective time for a parent to request reunification services. But our preservation rule does not require that the request be made at the optimal time. However, as Part II demonstrates, *when* a litigant preserves an argument may affect *what* she may argue on appeal. For instance, here, Mother's failure to request reunification services at the dispositional hearing does not prevent us from considering her appeal on preservation grounds. But her failure to request a primary permanency goal involving reunification nonetheless affects our disposition of her appeal. As we conclude in Part II, because Mother never sought a primary permanency goal that included reunification with the Children, the juvenile court was not required to order reunification services. Thus, though Mother's argument was preserved, her failure to request inclusion in the primary permanency goal ultimately affects the merits of her appeal.

[2] We granted certiorari on the question of whether the juvenile court was required to make an explicit determination of detriment on the record. In view of our holding that reunification services were not implicated under the facts presented here, we need not address the question of whether such a determination, where

(continued...)

reasonable services because of her incarceration without making a specific finding of detriment. We disagree.

¶ 15 A juvenile court must order reasonable services for an incarcerated parent only when reunification is consistent with the primary permanency goal established by the court. When the juvenile court has established a permanency goal that envisions reunification with an incarcerated parent, it "shall order reasonable services unless it determines that those services would be detrimental to the minor." UTAH CODE § 78A-6-312(24)(a).

¶ 16 With any question of statutory interpretation, our primary goal is to effectuate the intent of the Legislature. *State v. Watkins*, 2013 UT 28, ¶ 18, 309 P.3d 209. The best evidence of the Legislature's intent is the statute's plain language. *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863. "[W]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682 (internal quotation marks omitted).

¶ 17 Our holding that reunification services need only be considered when they are implicated by the primary permanency goal for a child is consistent with a harmonious reading of section 312. Under section 312, "[w]henever the court orders continued removal" of the child, "the court shall first establish a permanency goal for the minor." UTAH CODE § 78A-6-312(2). The court is then required to "determine whether, in view of the primary permanency goal, reunification services are appropriate." *Id.* § 78A-6-312(2)(b). The statute also states that if the parent is incarcerated or institutionalized, "the court shall order reasonable services unless it determines that those services would be detrimental to the minor." *Id.* § 78A-6-312(24)(a). Thus, the statutory framework begins with the establishment of a primary permanency goal. And reunification services are considered in relation to that goal. Because reunification services are linked to the permanency goal and not independent of it, the requirement for providing such services must be construed in light of that goal. Thus, if a parent is incarcerated and the primary permanency goal does not envision reunification, then the requirements of subsection (24) do not come into play. It is only

---

[2](...continued)
required, need be made explicitly on the record or merely supported by it.

when a primary permanency goal implicates an incarcerated parent that subsection (24) apply.

¶ 18 Nothing in the statutory language suggests that the juvenile court must order reunification services to incarcerated parents regardless of the primary permanency goal. Nor does the statutory language indicate that the juvenile court must invert the usual decision process and order services to an incarcerated parent before setting a primary permanency goal.

¶ 19 Mother's proposed construction of subsection (24) would require the juvenile court to order reunification services to an incarcerated parent, absent a finding of detriment, regardless of the primary permanency goal. But such an interpretation would privilege the class of incarcerated parents over nonincarcerated parents whose eligibility for such services is dependent upon a primary permanency goal that contemplates reunification. Moreover, the factors listed in section 24(b) need only be considered when, "in view of the primary permanency goal, reunification services are appropriate for the minor and the minor's family." *Id.* § 78A-6-312(2)(b). For example, in a situation where a child's primary permanency goal is adoption, it would be futile for the juvenile court to consider "the degree of parent-child bonding," "the length of the [parent's] sentence," or "the nature of the treatment." *Id.* § 78A-6-312(24)(b). Similarly, when adoption is a child's primary permanency goal, many of the statutory factors, such as "the degree of detriment of the minor if services are not offered" and "the minor's attitude toward the implementation of family reunification services" are rendered moot. *Id.* In short, the factors enumerated in subsection 24(b) contemplate a continuing relationship between parent and child. This is evidence of the Legislature's intent that these factors need only be considered when "reunification services are appropriate for the minor and the minor's family," "in view of the primary permanency goal." *Id.* § 78A-6-312(2)(b).

¶ 20 At the dispositional hearing in this case, the juvenile court set a permanency goal of reunification with Father. Because Mother was not implicated by that permanency goal, the juvenile court was not required to consider whether she qualified for reunification services. The juvenile court understood this. It explained that "the permanency goal set by the court in this case was for reunification with [Father] because he was the custodial parent at the time of removal and because [Mother] was serving a long-term prison

sentence." And when the primary permanency goal was changed to adoption, ordering reunification services to either parent would have been inconsistent with that goal.[3]

¶ 21 The court of appeals reversed the juvenile court because the juvenile court failed to make an explicit on-the-record determination that reunification services with Mother would be detrimental to the Children. *L.G. v. State (State ex rel. A.T.)*, 2013 UT App 184, ¶ 15, 307 P.3d 672. But whether such a determination must be made on the record or simply supported by the record is not implicated here. In this case, the juvenile court was simply not required to determine whether reunification services would be detrimental to the Children because the permanency goal did not contemplate reunification with Mother. We therefore reverse the court of appeals.

## CONCLUSION

¶ 22 Utah Code section 78A-6-312 directs juvenile courts to order reasonable reunification services for an incarcerated parent when the services are consistent with the primary permanency goal set by the court. Here, the juvenile court established a primary permanency goal of adoption. It therefore was not required to provide reunification services to Mother. We reverse the court of appeals and remand this case to the court of appeals with instructions that it consider Mother's additional argument regarding the allegations of child abuse.

---

[3] Had the Children's primary permanency goal implicated reunification with Mother, the juvenile court would have erred had it withheld reunification services based solely on Mother's incarceration without performing the analysis required under Utah Code section 78A-6-312(24).