*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 74**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner*,

*v.*

THE HONORABLE TERRY L. CHRISTIANSEN, THIRD
DISTRICT COURT; THE HONORABLE KATE A. TOOMEY,
THIRD DISTRICT COURT; THE HONORABLE STEVE L.
HANSEN, FOURTH DISTRICT COURT; THE HONORABLE W.
BRENT WEST, SECOND DISTRICT COURT; and THE
HONORABLE ERIC A. LUDLOW, FIFTH DISTRICT COURT,
*Respondents.*

No. 20131107
Filed August 14, 2015

Original Proceeding in this Court

Attorneys:

Simarjit S. Gill, T. J. Tsakalos, Blake A. Nakamura,
Salt Lake City, for petitioner

Brent M. Johnson, Alison Adams-Perlac,
Salt Lake City, for respondents

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PARRISH, and JUDGE PEARCE joined.

Due to his retirement, JUSTICE NEHRING does not participate herein;
COURT OF APPEALS JUDGE JOHN A. PEARCE sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter and,
accordingly, did not participate.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 In Utah's criminal justice system, grand jury indictments are rare. The vast majority of felony cases are prosecuted by

information—that is, by a prosecutor filing charges directly in district court. The historical role of the grand jury is now generally played by the district court itself, which holds preliminary hearings to review the state's evidence and reject unjustified prosecutions.

¶2      But prosecution by information may not be ideal in all circumstances. Recognizing this, the legislature has established procedures for grand jury indictment as an alternative means of prosecution. It has not, however, given the state total discretion to prosecute by whatever means it wishes. Rather, a prosecutor wishing to prosecute by indictment must first persuade a special panel of five district judges that there is good cause to summon a grand jury. If the panel summons a grand jury, the prosecutor may then ask the jurors to return an indictment and charge the defendant without a preliminary hearing.

¶3      In the case before us, the state asked the panel to summon a grand jury, but the panel refused. The state now petitions this court for an extraordinary writ, claiming that the panel abused its discretion by denying the state's request. The panel responds that its decisions are not subject to review by extraordinary writ and that the state's petition must therefore be denied.

¶4      We agree with the state: our power to issue extraordinary writs does give us jurisdiction to review the panel's decisions. But when we review the panel's decision in this case, we find the state's allegations to be without merit. The panel did not abuse its discretion, and we therefore deny the state's petition for extraordinary relief.

## BACKGROUND[1]

¶5      In October 2013, the Salt Lake County District Attorney (the state) filed a certification and statement of facts requesting a grand jury. A few days later, the grand jury panel held a hearing to consider the state's request. The panel found that the state had not established good cause to summon a grand jury, and the state's request was accordingly denied.

¶6      In December 2013, the state filed a petition for extraordinary relief in this court. After preliminary briefing and oral

---

[1] By law, the panel's hearings are secret. UTAH CODE § 77-10a-2(1)(a). This summary of facts includes only the information about the hearings that has been made public in order to facilitate litigation; it does not include the facts the state presented to the grand jury panel, the identity of the party or parties whom the state sought to indict, or the reasons the panel gave for its decision.

argument to address various confidentiality issues, we asked the parties to present their arguments on the merits, instructing them to address three legal questions:

> (1) Does the court have jurisdiction under Utah Rule of Civil Procedure 65B(d) to review the Panel's "good cause" determination made pursuant to Utah Code section 77-10a-2(3)?
>
> (2) Assuming the court has jurisdiction to consider the petition, what is the proper standard of review applicable to the panel's "good cause" determinations?
>
> (3) What is the proper scope and definition of "good cause" as used in Utah Code section 77-10a-2(3)? In addressing this question, the parties shall consider how the contours of "good cause" are informed by the proper constitutional role of the panel in criminal investigations, given its nature as a creature of statute vested by the legislature with authority?

**STANDARD OF REVIEW**

¶7 We review the panel's decision for an abuse of discretion. *See* UTAH R. CIV. P. 65B(d)(2)(A) (allowing extraordinary relief when a judicial body "has . . . abused its discretion").

**ANALYSIS**

I. WE HAVE JURISDICTION TO CONSIDER THE STATE'S PETITION

¶8 The respondent judges argue that we lack jurisdiction to issue an extraordinary writ in this case. We disagree. Utah Rule of Civil Procedure 65B allows us to review the decisions of "officer[s] exercising judicial functions," and we conclude that the panel exercises a judicial function.

*A. We May Review the Decisions of Officers Exercising Judicial Functions*

¶9 Our power to issue extraordinary writs is grounded in statute and in the Utah Constitution, both of which grant the supreme court "original jurisdiction to issue all extraordinary writs." UTAH CONST. art. VIII, § 3; UTAH CODE § 78A-3-102(2). Our exercise of this power is regulated by rule 65B of the Utah Rules of Civil Procedure. Under that rule, a party may petition the court for an extraordinary writ if (1) it has suffered a grievance that falls into one

of the categories listed in the rule and (2) "no other plain, speedy and adequate remedy is available." UTAH R. CIV. P. 65B(a).

¶10 In this case, both parties agree that no other plain, speedy, and adequate remedy is available. [Petitioner supp. Brief (public) 2; Respondent supp. brief (public) 3] Neither the statute delineating our jurisdiction nor the statute establishing the grand jury panel provides for a direct appeal from the panel's decision. *See* UTAH CODE § 78A-3-102 (supreme court jurisdiction); *id.* § 77-10a-2 (establishing the grand jury panel). No other basis has been asserted that would permit us to hear such an appeal, and no other procedure has been suggested by which the state's asserted grievance could be redressed. If the state is to have a remedy, it must be by extraordinary writ.

¶11 Therefore, the only question is whether the state has suffered a grievance that falls into one of the categories listed in the rule. The state contends that it has satisfied the requirements of Rule 65B(d): "Appropriate relief may be granted . . . where an inferior court, administrative agency, or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion . . . ." UTAH R. CIV. P. 65B(d)(2)(A). The rule further provides that "[w]here the challenged proceedings are judicial in nature, the court's review shall not extend further than to determine whether the respondent has regularly pursued its authority," *Id.* 65B(d)(4), but as we have recently held, "[a] court wrongfully uses its judicial authority when it abuses its discretion." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 21, 299 P.3d 1058; *see also State v. Barrett*, 2005 UT 88, ¶¶ 7–26, 127 P.3d 682 (history and meaning of Rule 65B); *id.* ¶ 26 ("[E]xtraordinary relief is available upon a showing that the lower court abused its discretion . . . .").

¶12 Whether we have authority to review the panel's decision therefore depends on whether it is "an inferior court, administrative agency, or officer exercising judicial functions." UTAH R. CIV. P. 65B(d)(2)(A).

### B. The Panel Exercises a Judicial Function

¶13 Before addressing the question of whether summoning a grand jury is a judicial function, we note two important facts. First, the grand jury panel is composed of district court judges and possesses "the authority of the district court." UTAH CODE § 77-10a-2(1)(a). Second, the Utah Constitution explicitly provides that "no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted." UTAH CONST. art. V, § 1. These two facts suggest that

unless the panel's function is judicial, its existence and function may violate the Utah Constitution.

¶14    Fortunately, we conclude that the panel's function is in fact judicial. To arrive at this conclusion, we look first to the history of grand juries, in Utah and elsewhere, in order to shed light on the role the panel is intended to perform. We then look to the role the panel plays today, concluding that it is consistent with the other functions judges perform in our criminal justice system.

1. History

¶15    It is challenging to determine whether summoning grand juries is a judicial function in the modern sense because the grand jury, one of the oldest institutions of Anglo-American law, predates our concept of separation of powers by several centuries.[2] Its purpose and form have changed radically and repeatedly in its millennium of existence,[3] as have the procedures by which it is summoned.

---

[2] Juries of accusation were required by the Assize of Clarendon in 1166. JOHN H. LANGBEIN ET AL., HISTORY OF THE COMMON LAW: THE DEVELOPMENT OF ANGLO-AMERICAN LEGAL INSTITUTIONS 35–43 (2009). The right to a grand jury as a safeguard against unjust prosecutions was established by the Statute of Westminster in 1285 and a Statute of Edward III in 1352. *Id.* at 216–19. In comparison, the seminal argument for dividing governmental power among separate legislative, executive, and judicial branches—Montesquieu's *The Spirit of the Laws*—was not published until 1748.

We are not the first court to recognize the difficulty of fitting the grand jury into current understandings of the separation of powers. In the twentieth century, federal courts sometimes called the grand jury a judicial institution and sometimes called it part of the executive branch. Niki Kuckes, *The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury*, 94 GEO. L.J. 1265, 1274 (2006). Eventually the U.S. Supreme Court concluded that the grand jury "belongs to no branch of the institutional Government." *United States v. Williams*, 504 U.S. 36, 47 (1992).

[3] For example, when juries of accusation were first established, they did not hear evidence gathered by professional police. (There were no professional police.) Instead, the jurors were expected to arrive already informed, whether by personal knowledge or by rumor, about the crimes they were to charge. LANGBEIN, *supra* note 2, at 208–09.

¶16 Originally, juries of accusation were convened by officers of the crown who, like the crown itself, had both executive and judicial powers.[4] Later, juries were convened by judges. For most of the institution's history, however, grand juries were necessary for all felony prosecutions and were therefore summoned as a matter of course whenever felony cases were to be brought.

¶17 Allowing judges to decide whether a grand jury is warranted, as Utah does, has its roots in nineteenth-century criticism of the grand jury system. By that time, preliminary hearings before magistrates—originally a means to gather evidence of guilt—had become what they are in Utah today: public, adversary proceedings that screen out unjustified prosecutions. In comparison with preliminary hearings, grand jury investigations came to be seen as "costly, slow, amateur, and prone to error,"[5] not to mention secretive and unfair, given the defendant's lack of representation at the proceedings.

¶18 Beginning in the 1850s, this criticism led a number of states to allow prosecution by information in all criminal cases, thereby removing the grand jury from its traditional role of protecting citizens from unjust prosecution. 1 SARAH SUN BEALE ET AL., GRAND JURY LAW AND PRACTICE 2D § 1:5, at 22–23 (rev. 2014). None of them abolished the grand jury entirely, however. *Id.* at 22. Instead, they kept the grand jury as an inquisitorial body whose most prominent purpose was the investigation of public corruption. *Id.* at 25–26.

¶19 California considered this investigative role so important that it required a grand jury to be summoned "at least once a year in each county." CAL. CONST. art. I, § 8 (1879) (current version at CAL. CONST. art. I, § 23). But not all reformers were comfortable with grand juries' investigative powers; some decried the institution as a modern Star Chamber whose secret proceedings routinely violated the civil liberties of the people they investigated. RICHARD D. YOUNGER, THE PEOPLE'S PANEL: THE GRAND JURY IN THE UNITED STATES, 1634–1941, at 66, 68 (1963). Such criticism led other states— including prominently Michigan, Washington, and Wisconsin—to

---

[4] For example, county sheriffs presided over courts and conducted trials in cases of minor crime, *id.* at 40; but they were also tax collectors and jailors, *id.* at 18–19.

[5] *Id.* at 708. *But see* Roger A. Fairfax, Jr., *Grand Jury Innovation: Toward a Functional Makeover of the Ancient Bulwark of Liberty*, 19 WM. & MARY BILL RTS. J. 339, 341–45 (2010) (disputing these arguments against grand juries).

pass laws under which "only a judge could initiate a grand jury investigation."[6]

¶20    Utah joined this latter group when its constitution took effect in 1896. Using language borrowed from "Michigan, Wisconsin, Washington, Colorado and California,"[7] the new Utah Constitution allowed all offenses to be prosecuted either "by information after examination and commitment by a magistrate" or "by indictment, with or without such examination and commitment." UTAH CONST. art. I, § 13 (1896). And on the issue of when grand juries should be called, Utah followed Michigan and Washington, not California: "[N]o grand jury shall be drawn or summoned unless in the opinion of the judge of the district, public interest demands it." *Id.*

¶21    This constitutional provision was amended in 1948 to allow the legislature to regulate "[t]he formation of the grand jury." UTAH CONST. art. I, § 13; *see also* 1947 Utah Laws 483, 483–84 (proposing the amendment). But the legislature, while repeatedly amending Utah's grand jury laws, has never strayed from the notion that judges should decide whether a grand jury is necessary, as reflected in the following history:

1. Until 1967, the legislature kept the original constitutional scheme: a single district judge could summon a grand jury if he determined it was in the public interest. UTAH CODE § 77-18-1 (1953).

2. From 1967 to 1980, the judges of each district were required to sit en banc at least once every other year to hear citizens' requests for grand juries. They were to summon a grand jury if they found "reasonable cause" to believe that "law enforcement ha[d] failed" or that calling a grand jury was "in the interest of justice." *Id.* § 77-18-1.1 (1978).

3. From 1980 to 1990, biennial hearings were still required, but district courts were no longer required to sit for the hearings

_____

[6] 1 BEALE ET AL., *supra* ¶ 18, § 1:5, at 22 (referring to Michigan); *see also* WASH. CONST art. I § 26 ("No grand jury shall be drawn or summoned in any county, except the superior judge thereof shall so order."); YOUNGER, *supra* ¶ 19, at 150 ("[After grand jury reform], the grand jury was to appear in Wisconsin only when one had been specially summoned by a judge.").

[7] 1 OFFICIAL REPORT OF THE PROCEEDINGS AND DEBATES OF THE CONVENTION ASSEMBLED AT SALT LAKE CITY ON THE FOURTH DAY OF MARCH, 1895, TO ADOPT A CONSTITUTION FOR THE STATE OF UTAH 313 (1898) (statement of Mr. Wells).

en banc. *Id.* § 77-10-1(1) (1982). The standard for calling a grand jury also changed, with the new statute stating only that the judges should summon a grand jury if there was "reasonable cause" to do so. *Id.*[8]

4. Finally, in 1990, the legislature established our present system, in which all authority to summon grand juries rests in a single statewide panel of five district judges. 1990 Utah Laws 1484. It also established, for the first time, procedures by which prosecutors could formally request a grand jury. *Id.* Whether prosecutors request a grand jury or not, however, a grand jury may be summoned only if the panel finds "good cause." UTAH CODE § 77-10a-2(2)(a), (3).

¶22 Throughout these changes, the role of judges has remained constant. Under every version of Utah's grand jury laws, from our constitution's ratification to the present, judges have had the exclusive responsibility to determine whether a grand jury should be summoned. Further, the laws granting judges this responsibility have always given them great discretion in fulfilling it, using broad language like "public interest,"[9] "the interest of justice,"[10] or "good cause to believe a grand jury is necessary"[11] to explain when a grand jury should be summoned.

¶23 Given this unbroken history of judges—and only judges— exercising discretion to determine whether grand juries should be summoned, we readily conclude that the convening of a grand jury in Utah's system is a judicial function.

2. Contemporary Practice

¶24 Although the foregoing history is sufficient to persuade us that the panel's function is judicial, we also note briefly that the panel's role in this case is consistent with the other roles that judges play in our criminal justice system: the panel operates as a check on prosecutorial power. Convening a grand jury does not merely substitute the jury for a preliminary hearing magistrate with no other consequences. Instead, it allows prosecutors to circumvent a number of protections that our law otherwise affords people suspected of crime.

---

[8] Additionally, the 1980 statute allowed district courts to summon special-purpose grand juries on their own initiative. UTAH CODE § 77-10-1(2) (1982).

[9] UTAH CONST. art. I, § 13 (1896).

[10] UTAH CODE § 77-18-1.1 (1978).

[11] *Id.* § 77-10a-2(2) (2015).

¶25 A prosecutor who files a criminal information commences adversary litigation. The defendant then has a right to be informed of the charges and to be represented by counsel. *See* U.S. CONST. amend. VI; *Coleman v. Alabama*, 399 U.S. 1, 9–10 (1970) (holding that preliminary hearings are a "critical stage" of the criminal process). The defendant must be allowed to present evidence in her defense, to challenge the admissibility of the prosecution's evidence, and to cross-examine the prosecution's witnesses. She also has a right to discovery, and the prosecution must give her all the exculpatory evidence in its possession even if she fails to request it. *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999) (summarizing prosecutors' disclosure duties).

¶26 By persuading the panel to summon a grand jury, a prosecutor postpones all of these obligations to defendants until after he obtains an indictment. He has no duty to inform his targets they are under investigation unless he calls them as witnesses. *See* UTAH CODE § 77-10a-13(4)(b), (4)(c) (explaining the circumstances in which the prosecutor must inform witnesses they are under investigation). Even if he does call them as witnesses, their right to counsel is limited to a right to be advised by counsel while testifying.[12] Defense counsel receive no opportunity to challenge the prosecutor's evidence or to present their own case to the grand jury, and the prosecutor has no obligation to share evidence with the defense until after the grand jury returns an indictment, *Id.* § 77-10a-13(4)(d).

¶27 Finally, and perhaps most importantly, when a prosecutor persuades the panel to summon a grand jury, the prosecutor gains the power to issue subpoenas in furtherance of the grand jury's investigation. *Id.* § 77-10a-13(3)(a). He can issue such subpoenas on his own initiative, without prior approval from the grand jury, *id.*, to compel the production of evidence for which he would otherwise need probable cause and a warrant.[13] And his use of this subpoena power is not limited to the pursuit of an indictment against a particular defendant or even to the investigation of any particular

---

[12] Even the right to counsel's advice while testifying is not guaranteed by the Federal Constitution, *See United States v. Williams*, 504 U.S. 36, 49 (1992), but is granted by Utah statute, UTAH CODE § 77-10a-13(4)(a).

[13] This investigative use of the grand jury subpoena is common in the federal system. For a discussion of the practice, see Niki Kuckes, *The Useful, Dangerous Fiction of Grand Jury Independence*, 41 AM. CRIM. L. REV. 1, 35–39 (2004).

crime: once summoned, a grand jury "may inquire into and indict for any criminal activity occurring within the state." *Id.* § 77-10a-3.

¶28    Thus, as is the case with search or arrest warrants, the convening of a grand jury grants powers to law enforcement that it would not otherwise have. And, as is also the case with warrants, our law requires judicial approval before a grand jury may be summoned. The inquiry required for such approval is, admittedly, quite different from the probable cause determination necessary for a warrant. But the purpose of the inquiry is the same: protecting Utahns' civil liberties from unjustified intrusions.

¶29    We therefore conclude, for reasons both historical and practical, that determining whether a grand jury should be summoned is a judicial function. Our power to issue extraordinary writs therefore allows us to review the panel's performance of that function.

## II.    THE PANEL DID NOT ABUSE ITS DISCRETION[14]

¶30    In some circumstances, relevant law does not lead a court to a single correct outcome and exclude all other possibilities. Rather, it presents the court with a set of options and trusts the court to determine which option is best suited to the facts at hand. A court making a decision under such conditions is said to have discretion.

¶31    To conclude that the panel abused its discretion, we would have to do more than decide that it failed to choose the best option. Instead, we would have to conclude either (1) that the panel's decision was not actually among the options the law permitted under the circumstances, or (2) that the process by which the panel reached its decision was incorrect or inadequate. Examples falling in the latter category are decisions influenced by an incorrect understanding of relevant law,[15] decisions that give weight to inappropriate considerations (or that fail to give adequate weight to

---

[14] The analysis in this section is deliberately abstract, and our references to the hearing below are limited to the material contained in the parties' briefs. We have of course reviewed the entire record, but the question of what the secrecy provisions of the statute actually cover has not been raised or briefed, and we therefore refrain from disclosing details of the panel's reasoning contained in the record of the hearing below.

[15] *See State v. Barrett*, 2005 UT 88, ¶¶ 15–17 & n.5, 127 P.3d 682.

mandatory considerations),[16] and "arbitrary" decisions "not based on fact, logic, and reason."[17]

¶32 It is this second category of error that the state alleges took place below. Rather than arguing that the panel had no choice but to summon a grand jury, the state objects to three aspects of the panel's reasoning. First, the state argues that the panel's decision was motivated by an error of law—specifically, a misinterpretation of the statutory "good cause" standard that governs requests for a grand jury. Second, the state argues that the panel's decision rested in part on legally inappropriate factors. And third, the state alleges that the panel acted out of impermissible "personal biases against grand juries."

¶33 We address each of these arguments in turn.

A. *The Panel Did Not Misinterpret the "Good Cause" Standard*

¶34 The statute allowing the state to seek a grand jury reads as follows:

> (3) When [a prosecutor] certifies in writing to the supervising judge that in his judgment a grand jury is necessary because of criminal activity in the state, the panel shall order a grand jury to be summoned *if the panel finds good cause exists.*
>
> (4) In determining whether good cause exists under Subsection (3), the panel shall consider, among other factors, whether a grand jury is needed to help maintain public confidence in the impartiality of the criminal justice process.

UTAH CODE § 77-10a-2(3) to -2(4) (emphasis added).

¶35 According to the state, this statute's "good cause" language establishes a deferential standard under which summoning grand juries is largely a matter of prosecutorial discretion. "Put simply," the state argues, "the panel must determine if the District Attorney's request is reasonable, and, if so, respect prosecutorial discretion in requesting the seating of a grand jury." By scrutinizing the state's request, the panel supposedly "step[ped] into the

---

[16] *See* Robert C. Post, *The Management of Speech: Discretion and Rights*, 1984 SUP. CT. REV. 169, 216 (citing cases in which the consideration of incorrect factors or improper weighting of correct factors was considered an abuse of discretion).

[17] 5 AM. JUR. 2D *Appellate Review* § 623 (2015).

prosecutor's role by determining that direct filing [was] a more suitable process."[18]

¶36    We cannot agree. Under Utah law, as we explained above, the discretion to call a grand jury has always belonged to judges, not to prosecutors. Until 1990, no statute gave prosecutors the right even to request a grand jury, much less the right to have a grand jury summoned any time the prosecutor's request was "reasonable." And indeed it would be odd if the summoning of grand juries were a matter of prosecutorial discretion, since the chief effect of summoning a grand jury is to give the prosecutor a number of powers he would otherwise not possess.

¶37    The current version of the statute does not depart from our historical practice. The words "good cause," by themselves, could be construed to suggest some level of deference to the prosecutor, but the rest of the statute makes clear that any such deference must be slight. To begin with, the prosecutor requesting a grand jury must certify not merely that a grand jury is desirable, or even that it is the best option available, but rather that "a grand jury is *necessary.*" *Id.* § 77-10a-2(3) (emphasis added). Similarly, the statute directs the panel to "consider . . . whether a grand jury is *needed* to help maintain public confidence in the impartiality of the criminal justice process." *Id.* § 77-10a-2(4) (emphasis added).

¶38    This language of necessity, combined with the words "good cause," suggests an inquiry not fundamentally different from the one the panel undertakes when a private citizen requests a grand jury—that is, the inquiry of whether there is "good cause to believe a

---

[18] To support its arguments about prosecutorial discretion, the state referred us to the legislative history of a 2010 amendment to the grand jury statute. This amendment slightly altered the language of section 77-10a-2(3) and added section 77-10a-2(4), which requires the panel to consider a grand jury's potential effect on the public's confidence in the judicial system. *See* 2010 Utah Laws 505.

We agree with the state that this legislative history supports the notion that there might sometimes be good cause when the public would perceive a prosecutor's decisions to be politically motivated. But it does not support a conclusion that the "good cause" standard is as deferential as the state argues, and even if it did, it would be irrelevant. The "good cause" standard was not established by the 2010 amendment to the grand jury statute, but by the act passed in 1990 that allowed the prosecutor to request a grand jury. *See* 1990 Utah Laws 1484. There is no reason to believe that legislators' speeches in 2010 are a reliable guide to the intent of their predecessors twenty years earlier.

grand jury is necessary." *Id.* § 77-10a-2(2)(a); *see also Dep't of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994) ("[T]he normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation marks omitted)). This does not mean, of course, that prosecutors are in the same position as private citizens who ask the panel to summon a grand jury. If a prosecutor can show good cause, the panel has no choice but to "order a grand jury to be summoned," UTAH CODE § 77-10a-2(3), while a panel hearing a private citizen's request may decline to summon a grand jury even if good cause exists, *see id.* § 77-10a-2(2). But in both cases, the panel must exercise its independent judgment and "find[] good cause" to believe a grand jury is needed. *Id.* § 77-10a-2(2)(a) (governing requests by private citizens); *id.* § 77-10a-2(3) (governing requests by prosecutors). If it does not, the statute does not permit it to summon a grand jury.

¶39    We therefore reject the state's interpretation of the "good cause" standard, and, consequently, cannot disturb the panel's decision on that basis.

### B. *The Panel Was Not Influenced by Inappropriate Factors*

¶40    The state argues further that the panel's decision was influenced by a number of factors that, it claims, are legally irrelevant to the finding of good cause. By invoking such "non-statutory considerations," the panel supposedly "ignored the statutory process" and rendered a decision based on "flawed methodology."

¶41    We find this argument puzzling, given that the statute does not restrict the panel's deliberation to any particular set of factors. It does establish a single factor that the panel must consider—namely, "whether a grand jury is needed to help maintain public confidence in the impartiality of the criminal justice process"—but it explicitly states that this is merely one factor "among other[s]" that the panel should consider. *Id.* § 77-10a-2(4). Which "other factors" should be considered is left to the panel's discretion. *Id.*

¶42    We reject, for similar reasons, the state's assertion that the panel's judges may not "weigh their personal experiences" in reaching their decision. Because the statute does not establish any particular method by which the panel should evaluate a grand jury's effect on public opinion, nothing prohibits them from drawing on any of their personal experiences that may be relevant—in particular, their personal experiences with grand juries and with the

state's alternative means of prosecution, to which the requested grand jury must be compared in order to determine whether it is actually "needed." *Id.* Indeed, given the panel's secrecy, it is difficult to imagine a basis other than personal experience on which the panel could make this determination.

¶43     All this does not mean, of course, that the panel has unlimited freedom to choose the factors it will consider, or the means by which it will assess a grand jury's potential effect on public opinion. Obviously the panel's judges may not refuse to summon a grand jury merely because they personally dislike the prosecutor who has made the request, and they may not predict a grand jury's effect on public opinion by consulting tarot cards or astrology tables. But so long as the panel considers the single factor it is required to consider, and so long as its choice of additional factors appears reasonably calculated to serve the purposes of the grand jury statute and the interests of justice, we must defer to its judgment.

¶44     Applying this deferential standard to the panel's decision, we conclude that the state has not met its burden: all the factors on which the panel relied were appropriate, and the way it weighed those factors does not appear to have been irrational, arbitrary, or demonstrably inconsistent with governing law.

*C.  The Panel's Decision Shows No Signs of Bias*

¶45     Finally, we reject the state's allegation that the panel's decision was motivated by inappropriate "personal biases against grand juries." If, with this language, the state intended to allege actual bias—that is, an inability to consider the state's arguments fairly and render an impartial decision—then this allegation is absolutely without basis.

¶46     But if the state alleges merely that the panel approached the state's request with an open-minded skepticism—with an appreciation for the dangers of grand juries, and a preference for direct prosecution in the vast majority of cases—then it alleges no more than that the panel agrees with the law of Utah and with our constitution's framers, who themselves distrusted grand juries and allowed them to be appointed only in unusual circumstances.

¶47     In short, we see no bias that would allow us to disturb the panel's decision.

**CONCLUSION**

¶48     The respondents in this case perform a function that judges have performed throughout the history of our state: determining whether there is a good reason to summon a grand jury. The reason this role belongs to judges, rather than to the executive, is

that summoning a grand jury gives the prosecution potentially dangerous powers that it would not otherwise possess. The prosecution should not be able to grant itself these powers at will, so our law requires judges to act as a check on the executive's desire to summon grand juries.

¶49   Because the respondents' function is judicial, they must perform it with the obedience to law and careful reasoning we expect of judges entrusted with discretionary decisions. If they fail to do so, this court has authority under its extraordinary writ jurisdiction to correct their error.

¶50   But here we see no error to correct. The errors the state has alleged did not occur: the panel did not misinterpret the "good cause" standard, its decision was not influenced by factors it lacked authority to consider, and it showed no signs of inappropriate bias. Instead, the panel acted exactly as the statute directs it to act, employing its discretion with the care and impartiality we expect judges to employ. Under such circumstances, the rules governing our extraordinary writ jurisdiction do not allow us to substitute our judgment for that of the panel, or to assess for ourselves whether the state has established good cause. The legislature gave that power to the panel, not to us, and we will not arrogate it to ourselves.

¶51   The state's petition for extraordinary relief is therefore denied.

———————