*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 70**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SERGIO ALEJANDRO MEZA,
*Petitioner-Appellant,*

*v.*

STATE OF UTAH,
*Respondent-Appellee.*

No. 20130962
Filed August 14, 2015

Attorneys:

Aaron Tarin, Hakeem Ishola, Skyler K. Anderson, West Valley,
for petitioner-appellant

Tim L. Taylor, Lance E. Bastian, Provo, for respondent-appellee

JUSTICE PARRISH announced the judgment of the Court and
authored the opinion of the Court with respect to Part I,
in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUDGE ROTH joined.

JUSTICE PARRISH authored an opinion with respect to Part II, in
which JUSTICE DURHAM joined.

JUDGE ROTH authored an opinion concurring in part and
concurring in the result, in which CHIEF JUSTICE DURRANT joined.

ASSOCIATE CHIEF JUSTICE LEE authored an opinion concurring in
part and concurring in the result.

Due to his retirement, JUSTICE RONALD E. NEHRING did not
participate herein; COURT OF APPEALS JUDGE STEPHEN L. ROTH sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE PARRISH, opinion of the Court in part:

## INTRODUCTION

¶1 Sergio Meza appeals the district court's dismissal of his
petition under the Post-Conviction Remedies Act (PCRA) seeking to

withdraw his plea held in abeyance. In the alternative, Mr. Meza invites us to invoke our extraordinary writ authority to fashion a remedy allowing him to withdraw his plea.

¶2　We hold that the PCRA does not apply to a successfully completed plea in abeyance and therefore affirm the district court's dismissal of his PCRA petition. We decline Mr. Meza's request that we exercise our constitutional power to fashion an alternate remedy because he has another adequate remedy. Specifically, rule 60(b)(6) of our rules of civil procedure provides a vehicle for Mr. Meza to challenge his plea. He may accordingly seek to withdraw his plea under that rule by filing a motion in the justice court where the plea was entered.

## BACKGROUND

¶3　While represented by counsel, and pursuant to a plea-in-abeyance agreement, Mr. Meza pled no contest to charges of possession and use of a controlled substance and possession of drug paraphernalia. After Mr. Meza successfully complied with the terms of the agreement, the justice court withdrew his plea of no contest and dismissed the two drug charges.

¶4　Mr. Meza subsequently filed an action under the PCRA seeking to withdraw his plea in abeyance. Mr. Meza argues that his attorney provided ineffective assistance by advising him that the "abeyance plea carried no immigration consequences," when that is not the case.[1] The State filed a motion to dismiss, arguing that the district court could not consider Mr. Meza's PCRA claim because the only relief available under the PCRA is to set aside a conviction and the justice court had not entered a conviction against Mr. Meza. Mr. Meza responded that a plea in abeyance is a conviction under the PCRA. In the alternative, he asserted that the district court's constitutional authority allowed it to fashion a mechanism to allow him to challenge his plea.

¶5　The district court granted the State's motion to dismiss, concluding that the Legislature "did not intend a plea in abeyance to function as either a judgment or a conviction." The district court

---

[1] This case is before us on the limited question of whether the PCRA or another mechanism provides a forum for Mr. Meza. We therefore do not opine on the merits of Mr. Meza's claim that the plea in abeyance prejudices him under federal immigration law.

did not address Mr. Meza's argument that it had constitutional authority to fashion a mechanism to allow him to challenge his plea. Mr. Meza appealed the dismissal of his action to the court of appeals, which certified his appeal to us. We have jurisdiction pursuant to section 78A-3-102(3)(b) of the Utah Code.

## STANDARD OF REVIEW

¶6 "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law." *Winward v. State*, 2012 UT 85, ¶ 6, 293 P.3d 259 (internal quotation marks omitted). "The question of whether to grant a petition for extraordinary relief lies within the sound discretion of this court." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 22, 299 P.3d 1058.

## ANALYSIS

### I. THE DISTRICT COURT PROPERLY DENIED MR. MEZA'S PCRA CLAIM

¶7 Mr. Meza argues that the district court erred in dismissing his PCRA claim because it was properly brought under the PCRA.[2] Specifically, Mr. Meza asserts that the PCRA provides a remedy for any person who challenges either a conviction or a sentence and that his plea in abeyance constitutes a conviction falling within the scope of the PCRA. The State challenges both of these points, arguing that entitlement to relief under the PCRA requires both a conviction and a sentence and that Mr. Meza was neither convicted nor sentenced because the charges against him were dismissed once he successfully complied with the terms of his plea-in-abeyance agreement.

---

[2] In his opening brief, Mr. Meza also argues that the PCRA violates the equal protection provisions of the United States and Utah constitutions. Because this issue was not raised in the district court, we decline to address it on preservation grounds. In his reply brief, Mr. Meza suggests for the first time that the PCRA does not provide him due process. However, "issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived." *Spencer v. Utah State Bar (In re Application of Spencer)*, 2012 UT 92, ¶ 25 n.36, 293 P.3d 360 (internal quotation marks omitted). Because Mr. Meza first challenged the constitutionality of the PCRA on due process grounds in his reply brief, we also decline to address that issue.

¶8   We agree with the State.   The PCRA provides a post-conviction remedy to persons who have been both convicted and sentenced for a crime.  But under the plea-in-abeyance statute, no judgment of conviction is entered pending completion of a plea-in-abeyance agreement.  Accordingly, Mr. Meza is not entitled to relief under the PCRA.

*A. Both a Conviction and a Sentence Are Prerequisites to Relief Under the PCRA*

¶9   Mr. Meza argues that a petitioner may be entitled to relief under the PCRA if he has either a conviction *or* a sentence.  In so arguing, Mr. Meza relies on several provisions in the PCRA that reference a conviction or sentence and points to federal court decisions treating a plea in abeyance as a sentence or a conviction. *See, e.g.*, *United States v. Gorman*, 312 F.3d 1159, 1165–67 (10th Cir. 2002) ("Mr. Gorman's plea in abeyance was both an adjudication of guilt and a conviction.").   In response, the State acknowledges that the PCRA allows a petitioner to obtain relief from either a conviction or a sentence, but argues that the petitioner must be both convicted and sentenced before he is entitled to relief.  We agree with the State and hold that the PCRA requires a petitioner to be both convicted and sentenced before he is entitled to relief under the act.

¶10   When faced with a question of statutory interpretation, "our primary goal is to effectuate the intent of the Legislature." *LeBeau v. State*, 2014 UT 39, ¶ 20, 337 P.3d 254.  "The best evidence of the Legislature's intent is the statute's plain language." *Id.*  "[W]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Id.* (internal quotation marks omitted).

¶11   The PCRA provides that "a person who has been convicted *and* sentenced for a criminal offense may file an action . . . for post-conviction relief."   UTAH CODE § 78B-9-104(1) (emphasis added).  The meaning of "and" in this context is clear—both a conviction and a sentence are required before a petitioner may obtain PCRA relief.  In arguing to the contrary, Mr. Meza relies on sections 78B-9-102(1) and 78B-9-104(1), which reference conviction and sentence in the disjunctive.  But these sections speak not to the prerequisites for PCRA relief, but to the types of relief available.  For example, section 102(1) explains that the PCRA is "the sole remedy for any person who challenges a conviction or sentence."   And section 104(1) enumerates the grounds "to vacate or modify the conviction or

sentence." While these provisions specify a petitioner's remedy for a challenged conviction or sentence, they do not dictate the conditions that a petitioner must satisfy before he is entitled to relief.

¶12 We are bound by the statute's plain meaning and must give effect to its requirements. Accordingly, we hold that the PCRA requires that a petitioner be both convicted and sentenced before he is entitled to relief, even though the petitioner may choose to challenge only the conviction or the sentence.

¶13 Having concluded that both a conviction and a sentence are required before a petitioner is entitled to any relief under the PCRA, we next address whether Mr. Meza was convicted under the PCRA.

*B. Mr. Meza's Plea in Abeyance Was Not a Conviction*

¶14 The State argues that pleas in abeyance do not qualify as convictions for purposes of the PCRA. Mr. Meza relies on federal cases construing pleas in abeyance as convictions in arguing that a plea of guilty or no contest is considered a conviction. He also points to other Utah statutes that construe a plea of guilty or no contest as a conviction. Considering the plain language of the plea-in-abeyance statute, we do not find these sources persuasive. Except in those cases where a statute specifically provides otherwise, a successfully completed plea in abeyance is not a conviction and cannot be treated as such.

¶15 The plea-in-abeyance statute defines a plea in abeyance as "an order by a court, . . . accepting a plea of guilty or of no contest from the defendant." *Id.* § 77-2a-1(1). A court may hold a plea in abeyance "[a]t any time after acceptance of a plea of guilty or no contest but prior to entry of judgment of conviction and imposition of sentence." *Id.* § 77-2a-2(1). While the plea is held in abeyance, the court will "not enter judgment of conviction against the defendant nor impose sentence upon the defendant." *Id.* And if a defendant successfully completes the conditions of the plea-in-abeyance agreement, the court may either "reduce the degree of the offense and enter judgment of conviction and impose sentence for a lower degree of offense[] or . . . allow withdrawal of a defendant's plea and order the dismissal of the case." *Id.* § 77-2a-3(2).

¶16 In Mr. Meza's case, the justice court withdrew his plea and dismissed the case against him. Mr. Meza's plea in abeyance was held "prior to entry of judgment of conviction and imposition of sentence." *Id.* § 77-2a-2(1). And upon completion of Mr. Meza's plea-in-abeyance agreement, the court "allow[ed] withdrawal of

[his] plea and order[ed] the dismissal of the case." *Id.* § 77-2a-3(2)(b). Thus, no judgment of conviction was ever entered against Mr. Meza.

¶17 In light of the plain language of the plea-in-abeyance statute, we are not persuaded by Mr. Meza's references to other Utah statutes in which a plea in abeyance is considered a conviction. The plea-in-abeyance statute states the general rule that a successfully completed plea in abeyance is not a conviction. The statutes on which Mr. Meza relies are explicit exceptions to the general rule that simply have no application to the circumstances presented here. For example, the Cohabitant Abuse Procedures Act provides that "a plea of guilty or no contest to any domestic violence offense in Utah, which plea is held in abeyance[,] . . . is the equivalent of a conviction, even if the charge has been subsequently reduced or dismissed." *Id.* § 77-36-1.2(2). And in the Crime Victims Restitution Act, a conviction includes "(a) judgment of guilt; (b) a plea of guilty; or (c) a plea of no contest." *Id.* § 77-38a-102(1). And a plea in abeyance is either a "plea of guilty or of no contest." *Id.* § 77-38a-102(9). But neither of these exceptions is applicable here.[3]

¶18 We presume the Legislature uses each word advisedly. Had the Legislature intended a plea in abeyance to constitute a conviction in all circumstances, it would have so provided in the statute authorizing such pleas. But it did not. Rather, the statute provides to the contrary. And those statutes that do treat a plea in abeyance as a conviction do so only in explicitly defined contexts. For us to consider a plea in abeyance as a conviction in all cases would render the varying definitions created by the Legislature superfluous, which we will not do. We therefore hold that a successfully completed plea in abeyance resulting in dismissal of the original charges is not a conviction. Because Mr. Meza was never convicted, he does not qualify for relief under the PCRA.[4] We

---

[3] Other statutes also construe a plea in abeyance as a conviction. *E.g.*, UTAH CODE § 17-16-10.5(2)(c) (malfeasance in office); *id.* § 76-9-301.7(1) (cruelty to animals).

[4] The PCRA does provide a mechanism for a petitioner seeking to withdraw a guilty plea under certain circumstances. *See id.* § 77-13-6(2). The PCRA provides a forum for relief from a plea in abeyance when the plea in abeyance is revoked and a judgment of conviction is entered, or when the court, in accordance with a

(continued...)

therefore affirm the district court's dismissal of his PCRA action.

## II. A RULE 60(b)(6) MOTION IS AN ADEQUATE REMEDY TO CHALLENGE A SUCCESSFULLY COMPLETED PLEA IN ABEYANCE FOR INEFFECTIVE ASSISTANCE OF COUNSEL

¶19 While a Utah plea in abeyance is not considered a conviction for certain purposes under the PCRA, it is considered a conviction under certain federal laws.[5] Accordingly, Mr. Meza's plea in abeyance may have consequences for his immigration status. "Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (internal quotation marks omitted). And effective assistance requires "that counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374. But, as previously discussed, the PCRA does not provide a mechanism for challenging alleged ineffective assistance of counsel that leads to the entry of a plea in abeyance.[6] Mr. Meza argues that we retain

---

[4](...continued)
successfully completed plea-in-abeyance agreement, "reduce[s] the degree of the offense and enter[s] judgment of conviction and impose[s] sentence." *See id.* § 77-2a-3(2)(a). But it is not available to a defendant, such as Mr. Meza, who has the charges against him dismissed entirely.

[5] *E.g.*, *Perez-Hernandez v. Holder*, 332 F. App'x 458, 461 (10th Cir. 2009) ("[A] panel of this court has already held that a guilty plea held in abeyance entered in Utah state court satisfies the 8 U.S.C. § 1101(a)(48)(A) definition of a 'conviction' . . . ."); *United States v. Dell*, 359 F.3d 1347, 1349 (10th Cir. 2004) (concluding "that the [Utah federal] district court properly counted Dell's plea in abeyance as a conviction under [the United States Sentencing Guidelines]"); *United States v. Gorman*, 312 F.3d 1159, 1165 (10th Cir. 2002) ("Mr. Gorman's plea in abeyance was both an adjudication of guilt and a conviction.").

[6] The PCRA provides that it "establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense[,] . . . . replac[ing] all prior remedies for review, including extraordinary or common law writs." UTAH CODE § 78B-9-102(1). But because Mr. Meza does not challenge a conviction or a sentence, the PCRA's "sole remedy" provision is inapplicable to him and does

(continued...)

common-law authority to create an exception to the PCRA in order to grant him a mechanism to challenge his plea. Effectively, Mr. Meza is asking us to interpret the PCRA in such a way that it provides him a remedy. We need not consider Mr. Meza's request because he has another adequate remedy. There is therefore no need for the "common-law exception" he suggests.

¶20 In arguing that we should create an exception to the PCRA to provide him a remedy for his counsel's ineffective assistance, Mr. Meza relies on our constitutional authority to issue extraordinary writs. We agree with Mr. Meza that our constitutional authority to issue extraordinary writs gives us the authority to remedy ineffective assistance of counsel.[7] However, we need not exercise that constitutional authority because Mr. Meza has an adequate remedy under existing law.[8]

---

[6](...continued)
not foreclose us from addressing other remedies beyond those provided in the PCRA.

[7] "[A]n indication that no remedy exists in statute or rule to make real the promise afforded by a constitutional right gives rise to questions of what tool should be deployed to protect that right. . . . [E]xtraordinary writs embody the procedure traditionally used to protect such a right." *State v. Rees*, 2005 UT 69, ¶ 14, 125 P.3d 874. For example, we have used the petition for an extraordinary writ to review criminal convictions when a defendant's right to appeal has been improperly denied. *E.g.*, *Boggess v. Morris*, 635 P.2d 39, 42 (using the common-law writ of certiorari to review   1061 (Utah 1993) (affirming the issuance of a common-law writ of certiorari to review "the regularity of the proceedings to determine whether the [they] were in accordance with law[] and to correct errors in law affecting the substantial rights of the parties." (internal quotation marks omitted)).

[8] At oral argument the State asserted that Mr. Meza is not entitled to extraordinary relief unless he can identify the ancient writ that provided the specific relief he seeks. But this is a misapprehension of our power to issue extraordinary writs. "Our cases demonstrate the practical utility of the flexibility of extraordinary writs in various circumstances." *Renn v. Utah State Bd. of Pardons*, 904 P.2d 677, 684 (Utah 1995). Although the Utah Constitution "at one time listed
(continued...)

¶21 Associate Chief Justice Lee's concurrence contends that Mr. Meza never asked us to invoke our extraordinary writ power, arguing that, at most, we have been asked to use our constitutional power to entertain his PCRA petition. This is not how we understand Mr. Meza's argument. Mr. Meza repeatedly argued that "where there is no remedy under the PCRA," we "retain inherent constitutional authority to create common-law exceptions to the PCRA." It is true that Mr. Meza did not file a separate formal rule 65B petition for an extraordinary writ. But the entire crux of his argument to this court was based on our authority to issue extraordinary writs and both parties dedicated extensive discussion to this issue in their briefs and at oral argument. Because the PCRA does not apply at all to Mr. Meza's situation, it does not provide Mr. Meza a mechanism to challenge his alleged constitutional violation. Yet we have previously recognized that a remedy must exist "in statute or rule to make real the promise afforded by a constitutional right." *State v. Rees*, 2005 UT 69, ¶ 14, 125 P.3d 874; *see also Manning v. State*, 2005 UT 61, ¶¶ 26–27, 31, 122 P.3d 628 (creating an extraordinary remedy when no remedy existed under PCRA). Thus, a remedy must exist for a violation of a criminal defendant's right to effective assistance of counsel.

¶22 Accordingly, we interpret Mr. Meza's argument as inviting us to invoke our extraordinary writ authority to fashion a remedy in the wake of an unremedied constitutional deficiency. We "have original jurisdiction to issue all extraordinary writs." UTAH CONST. art. VIII, § 3. But we will issue an extraordinary writ only when "no other plain, speedy[,] and adequate remedy is available." UTAH R. CIV. P. 65B(a). In this case, extraordinary relief is not available

---

[8](...continued)
each type of writ that was within this court's jurisdiction to grant[,] . . . . the practice of specifically listing each available common law writ has been abandoned," *State v. Barrett*, 2005 UT 88, ¶¶ 10–11, 127 P.3d 682. Instead, the authority to issue extraordinary writs allows us to provide remedies "not available to a party unless necessary to preserve a right that cannot be protected by a standard legal or equitable remedy." BLACK'S LAW DICTIONARY 1408 (9th ed. 2009) (defining extraordinary remedy). *See Rex v. Bank of England* (1780) 99 Eng. Rep. 334 (K.B.) 335; 2 Dougl. 525 ("When there is no specific remedy, the Court will grant [the writ of] mandamus that justice may be done.").

because Mr. Meza has another remedy available for challenging his plea in abeyance. That remedy is a motion under rule 60(b)(6) of our rules of civil procedure.[9]

¶23 Rule 60(b) allows a court to "set aside a final judgment for reasons such as mistake, newly discovered evidence, or fraud."[10] *Honie v. State*, 2014 UT 19, ¶ 87, 342 P.3d 182. Rule 60(b) also contains a catch-all provision, subsection (6), which allows a party to seek relief for "any other reason justifying relief from the operation of the judgment." UTAH R. CIV. P. 60(b)(6). Rule 60(b)(6) motions are unavailable if the grounds for relief fall within subsections (1) through (5). *See Laub v. S. Cent. Utah Tel. Ass'n*, 657 P.2d 1304, 1306–07 (Utah 1982). And a rule 60(b)(6) motion may not be brought "in an attempt to evade the PCRA." *Kell v. State*, 2012 UT 25, ¶ 24, 285 P.3d 1133. But this case involves neither of these circumstances. Mr. Meza's claim does not qualify for relief under subsections (1)–(5), and since the PCRA does not apply to Mr. Meza, a motion under subsection (6) does not constitute an attempt to evade the substantive provisions of the PCRA.

¶24 To begin, Mr. Meza does not qualify for relief under subsections (1)–(5) of rule 60(b). These subsections allow a party to seek relief from a judgment in the event of (1) mistake or similar excuse; (2) newly discovered evidence; (3) fraud; (4) voidness; or (5) satisfaction, release, or discharge. None of these provisions even arguably apply here.

---

[9] Our rules of civil procedure "also govern in any aspect of criminal proceedings where there is no other applicable statute or rule." UTAH R. CIV. P. 81(e).

[10] Rule 60(b) "reflects and confirms the courts' own inherent and discretionary power, firmly established in English practice long before the foundation of our Republic, to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233–34 (1995) (internal quotation marks omitted). Some jurisdictions have recognized that rule 60(b) was intended "to retain all [the] substantive rights protected by the old writ of coram nobis." *State v. Lucero*, 563 P.2d 605, 606 (N.M. Ct. App. 1977); *see also Commonwealth v. Spaulding*, 991 S.W.2d 651, 655 (Ky. 1999) ("[Rule 60(b)(6)] is a catch-all provision that encompasses those grounds, which would justify relief pursuant to [the] writ of coram nobis, that are not otherwise set forth in the rule.").

¶25 Mr. Meza is also not seeking relief "in an attempt to evade the PCRA." *Kell*, 2012 UT 25, ¶ 24. The PCRA provides that it "establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense[,] . . . . replac[ing] all prior remedies for review, including extraordinary or common law writs." UTAH CODE § 78B-9-102(1). For this reason, we have generally not allowed rule 60(b)(6) motions in contexts where they would allow a movant to thwart the substantive or procedural requirements of the PCRA. *See Archuleta v. Galetka*, 2011 UT 73, ¶ 168, 267 P.3d 232. However, as explained above, the PCRA has no application to Mr. Meza inasmuch as he does not satisfy the substantive qualifications for PCRA relief. Because the PCRA's "sole remedy" provision is inapplicable here, a rule 60(b)(6) motion would not constitute an attempt to bypass the PCRA.

¶26 Having concluded that a rule 60(b)(6) motion would not constitute an attempt to thwart the requirements of rule 60(b)(1)–(5) or the PCRA, we examine whether Mr. Meza's unusual and exceptional circumstances warrant rule 60(b)(6) relief. Mr. Meza has "a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). The Constitution "ensure[s] that no criminal defendant—whether a citizen or not—is left to the mercies of incompetent counsel." *Padilla*, 559 U.S. at 374 (internal quotation marks omitted). Moreover, "the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families," requires counsel to "inform her client whether his plea carries a risk of deportation." *Id.*

¶27 In this case, Mr. Meza contends that his counsel was required to inform him of the possible immigration consequences of his plea in abeyance. And if Mr. Meza's counsel did not provide effective assistance, Mr. Meza must be allowed to challenge his plea. "[A]n absolute prohibition against providing a forum to a defendant in which he may assert defects in his guilty plea would certainly violate constitutional due process guarantees." *State v. Merrill*, 2005 UT 34, ¶ 29, 114 P.3d 585. Mr. Meza's need for a mechanism to assert a defect in his guilty plea and the PCRA's failure to provide such a mechanism leads us to conclude that his circumstances are sufficiently unusual and exceptional to qualify for relief under rule 60(b)(6).

¶28 Because rule 60(b)(6) provides Mr. Meza with a vehicle for challenging his guilty plea on the basis of ineffective assistance of

counsel, there is no reason to consider his request that we exercise our constitutional power to fashion a remedy for his alleged ineffective assistance of counsel. Mr. Meza may seek relief from the consequences of his plea by filing a rule 60(b)(6) motion in the justice court where he originally entered his plea in abeyance.

## CONCLUSION

¶29 The district court correctly concluded that Mr. Meza did not qualify for relief under the PCRA. The PCRA requires that a petitioner have been both convicted and sentenced before he is entitled to seek relief. But Mr. Meza was never convicted. We therefore affirm the dismissal of Mr. Meza's suit under the PCRA. We decline to rely on our constitutional authority to fashion a mechanism for Mr. Meza to withdraw his plea because he may obtain relief for the alleged ineffective assistance of counsel by filing a rule 60(b)(6) motion in the justice court.

---

JUDGE ROTH, concurring in part and concurring in the result:

¶30 I concur in Part I of the majority opinion and in the court's judgment "affirm[ing] the dismissal of Mr. Meza's suit under the PCRA." *See supra* ¶ 29. I cannot join in Part II, however. First, Mr. Meza did not request a writ of any kind in the lower court. *See 438 Main St. v. EasyHeat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. And whether or not preserved below, I cannot read Mr. Meza's argument on appeal—that this court has common-law authority to modify the PCRA or provide a remedy beyond its bounds—so broadly as to invoke this court's common-law writ jurisdiction. Second, I share Justice Lee's concern that the majority opinion's proposed rule 60(b)(6) solution to Mr. Meza's dilemma has not yet passed the test of the adversarial process, as it was neither raised nor briefed by the parties. *Cf. State v. Robison*, 2006 UT 65, ¶ 22, 147 P.3d 448. That said, a rule 60(b)(6) approach to resolution of the catch-22 created at the intersection of the plea-in-abeyance statute and the PCRA seems promising and is certainly worth further consideration in an appropriate setting.

---

ASSOCIATE CHIEF JUSTICE LEE, concurring in part and concurring in the judgment:

¶31 I concur in the judgment and in Part I of the opinion of Justice Parrish. But I disagree with the balance of that opinion. The issues it addresses in Part II are not properly before us, and that portion of the opinion is thus improperly advisory. Accordingly, I

A.C.J. LEE, concurring in part/concurring in the judgment

would affirm on the ground that the Post-Conviction Remedies Act (PCRA) affords no right to relief to Meza because he is not challenging a "conviction and sentence" in this case, *supra* ¶ 11, without addressing Meza's entitlement to relief on a petition for an extraordinary writ, *supra* ¶ 19 & n.6, or a motion under Utah Rule of Civil Procedure 60(b)(6), *supra* ¶ 23.

¶32 In reaching out to address the merits of a petition and motion that were not filed by Meza or addressed in the briefing on appeal, Justice Parrish proposes to resolve other issues of substantial significance. She would hold, specifically, that (a) "the PCRA's 'sole remedy' provision," Utah Code section 78B-9-102(1), is somehow "inapplicable to him and does not foreclose us from addressing other remedies beyond those provided in the PCRA," *supra* ¶ 19 n.7; (b) the constitution requires that a "remedy must exist" to give Meza "a mechanism to challenge his alleged constitutional violation" of his right to counsel, *supra* ¶ 21; and (c) our cases free a petitioner seeking an extraordinary writ of a burden of proof of any of the elements set forth in traditional common-law writs, substituting instead an undefined principle of "flexibility," *supra* ¶ 20 n.8.

¶33 The lead opinion's analysis of these significant issues strikes me as questionable. Because none of the issues was properly preserved or briefed in this case, moreover, they should not be resolved in this case.

¶34 The petition dismissed by the district court and presented to us on appeal was a PCRA petition, plain and simple. Meza never filed a petition for an extraordinary writ—not in the district court, and not in our court. The district court, moreover, issued a decision dismissing a PCRA claim. It never ruled on a petition for an extraordinary writ because it was never asked to do so. The issue was accordingly not preserved in the district court.[1]

---

[1] None of the district court filings in the record make any reference to Utah Rule of Civil Procedure 65B—our rule governing extraordinary relief. And none of Meza's filings includes a document that asks—in form or substance—for the issuance of an extraordinary writ. Justice Parrish does not contend otherwise. Although she purports to see in Meza's *appellate briefing* an implicit invocation of this court's power to issue an extraordinary writ, *supra* ¶ 21, Justice Parrish nowhere claims that Meza preserved the issue

(continued...)

A.C.J. LEE, concurring in part/concurring in the judgment

¶35 The same goes for the arguments on appeal. In their briefs the parties have argued over the extent of the courts' jurisdiction to entertain Meza's petition *under the PCRA*. That question has encompassed two subsidiary issues—the proper construction of Utah Code section 78B-9-104(1) (which authorizes the filing of a petition by a "person who has been convicted and sentenced for a criminal offense"), and whether the courts "retain inherent constitutional authority to create common law exceptions" to the limiting terms of the PCRA.

¶36 Meza's briefs nowhere seek to invoke the power of this court to issue an extraordinary writ. At most, he has asked us to "exercise [our] constitutional authority to entertain [his] *PCRA petition*." (Emphasis added).[2] That became even clearer at oral argument. In response to questions from the bench, Meza's counsel conceded that he had not filed a petition for an extraordinary writ and had nowhere set forth the legal or factual basis for issuance of such a writ. As if to underscore the point, counsel explained his

---

[1](...continued)
by asking the district court to rule on a petition for extraordinary writ.

[2] Justice Parrish claims to "understand Mr. Meza's argument" differently. *Supra* ¶ 21. She says that the "entire crux" of Meza's argument was his invocation of our "'inherent constitutional authority to create common law exceptions to the PCRA.'" *Supra* ¶ 21. But the quoted sentence is an outlier in the briefing. And, more importantly, even the quoted language is not an assertion of a right *to an extraordinary writ*; it is simply a request that we exercise our supposed "'constitutional authority to create *common law exceptions to the PCRA*.'" We have no such power, *see infra* ¶ 19–20, and even the lead opinion declines to assert it.

The problem is evident in the lack of briefing on the issues the lead opinion addresses. Nowhere in the parties' briefs on appeal do we see any argument at all on the elements of any extraordinary writ that might be available to Meza, on the existence of an alternative remedy (like a 60(b) motion), or on the supposed constitutional right to a remedy (rendering the PCRA's sole remedy provision unconstitutional). These are all issues that Justice Parrish reaches out to decide. This is not a matter of "interpret[ing] Mr. Meza's argument[s]" on appeal. *Supra* ¶ 22. It is a matter of providing a roadmap for his success on remand. That is not our role.

A.C.J. LEE, concurring in part/concurring in the judgment

reasons for stopping short of filing such a petition—"We didn't do it in this case because the State has consistently said, 'sorry, it doesn't work, you have to do PCRA.'" And the State, in response, noted that it was not "prepared to respond to the extraordinary writ argument, because Mr. Meza did not brief a petition for an extraordinary writ, and he did not ask for that form of relief."[3]

¶37 The availability of an extraordinary writ is thus a matter not properly presented for our decision. Instead, we are asked to decide only whether Meza's claim is proper under the terms of the PCRA, and whether we retain the power to establish an exception to the terms of that statute.[4] On the first issue, I would follow Justice Parrish's analysis. I would conclude that the PCRA means what it says, and that Meza's PCRA claim failed as a matter of law because he is not a "person who has been convicted and sentenced for a criminal offense." *See supra* ¶¶ 14–18. On the second issue, I would reject Meza's argument as foreclosed by the plain language of the PCRA and by our precedents.

¶38 By statute, a PCRA claim is "*the sole remedy* for any person who challenges a conviction or sentence for a criminal offense." UTAH CODE § 78B-9-102(1) (emphasis added). And such remedy "replaces all prior remedies for review, including extraordinary or common law writs." *Id*. In light of these clear, straightforward limitations, our cases have repudiated the notion of a judicial prerogative to create "common law exceptions" to the PCRA. We embraced that prerogative for a time.[5] But we have subsequently

---

[3] During oral argument, members of the court appeared to appreciate the problem—by noting that an opinion on the availability of a writ that Meza had not sought would constitute an "advisory opinion."

[4] Justice Parrish's attempts to justify her approach to resolving this case fall short. It cannot be said that we are simply "invok[ing] our extraordinary writ authority to fashion a remedy in the wake of an unremedied constitutional deficiency." *Supra* ¶ 22. Meza has neither briefed nor established any "constitutional deficiency," and the State has had no chance to respond to any such argument.

[5] *See, e.g., Tillman v. State*, 2005 UT 56, ¶¶ 21–23, 128 P.3d 1123 (applying *Hurst* exceptions to the PCRA); *Gardner v. Galetka*, 2004 UT 42, ¶ 17, 94 P.3d 263 (same); *Hurst v. Cook*, 777 P.2d 1029, 1037 (Utah

(continued...)

A.C.J. LEE, concurring in part/concurring in the judgment

held that any such authority was overridden by the above-quoted provisions, which were added to the PCRA by amendment in 2008. *See Taylor v. State,* 2012 UT 5, ¶ 11 n.3, 270 P.3d 471; *Carter v. State*, 2012 UT 69, ¶ 23, 289 P.3d 542; *Peterson v. Kennard*, 2008 UT 90, ¶ 16 n.8, 201 P.3d 956. At least since our decision in *Taylor*, there can be no question that we lack the authority to make "common law exceptions" to the PCRA.

¶39   That is all that we need to say to affirm the decision of the district court in this case. Because Meza has not filed a petition for extraordinary relief, and the parties have not briefed the propriety of such a petition on appeal, we should not opine on the merits of such a petition. For that reason I cannot join Part II of the lead opinion, which goes to some lengths to opine on the merits of a petition that Meza did not file, *see supra* ¶ 21, to conclude that such a petition should fail due to the availability of a motion under Utah Rule of Civil Procedure 60(b)(6), *see supra* ¶¶ 23–26, and, in the process, to opine on significant questions of constitutional law (as to a supposed requirement that a "remedy must exist" for any "alleged constitutional violation," *supra* ¶ 21).

¶40   The lack of adversarial briefing on the issues explored in part II of the lead opinion is troubling. We have no briefing, for example, on the question of whether a "plain, speedy[,] and adequate remedy is available" to Meza through a mechanism other than a petition for extraordinary relief. UTAH R. CIV. P. 65B. Nor do we have any briefing on the question of which if any of the common law writs might best fit Meza's case, or whether we may have the authority to extend an established writ to fit the facts and circumstances of this case. *See supra* ¶ 20 n.9 (rejecting the argument that "Meza is not entitled to extraordinary relief unless he can identify the ancient writ that provided the specific relief he seeks"). And because no one has briefed these questions, we likewise lack any briefing on the availability of the alternative remedy proposed by Justice Parrish—of a motion to set aside a judgment under Utah Rule of Civil Procedure 60(b)(6).

¶41   The notion of a constitutional requirement that a "remedy must exist" for any "alleged constitutional violation," *supra* ¶ 21, is

_____

[5](...continued)
1989) (establishing common law exceptions to post-conviction procedural bar).

A.C.J. LEE, concurring in part/concurring in the judgment

another matter that was not briefed by the parties. And this is a substantial leap. Justice Parrish's only authority for it is *State v. Rees*, 2005 UT 69, ¶ 14, 125 P.3d 874, but the quoted language from *Rees* is by no means a holding that the constitution guarantees a judicial remedy for any violation of its terms. *Rees* simply speaks of "*questions* of what tool should be deployed to protect" a right for which "no remedy exists in statute or rule." *Id.* (emphasis added). And the answer that the *Rees* opinion provides is not that a "remedy must exist" as a constitutional requirement, but simply that "extraordinary writs embody the procedure traditionally used to protect such a right." *Id.* That is uncontroversial. But it does not at all support the notion that for every constitutional right there must be a judicial remedy. American law, in fact, has long repudiated that principle.[6] I cannot concur in an opinion that sets aside longstanding

_____

[6] While *Marbury v. Madison* famously opined that for every right there is a remedy, 5 U.S. (1 Cranch) 137, 163 (1803), that has not been reality. Exceptions to this ideal are legion. *See* Richard H. Fallon, Jr. & Daniel J. Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 HARV. L. REV. 1731, 1784 (1991) ("Modern doctrines, beyond any peradventure, depart decisively from the notion that the Constitution requires effective remedies for all victims of constitutional violations"). In fact, in *Marbury* itself the court declined to fashion a remedy despite its conclusion that Marbury had a statutory right that had been violated. *See* 5 U.S. at 154, 180. And the doctrines limiting or altogether withholding a remedy when there has been a constitutional violation are extensive: sovereign immunity, *see United States v. Testan*, 424 U.S. 392, 400 (1976); absolute immunity, *see, e.g., Tenney v. Brandhove*, 341 U.S. 367, 376, 379 (1951); qualified immunity, *see Harlow v. Fitzgerald*, 457 U.S. 800 (1982); exceptions to the Fourth Amendment's exclusionary rule, *see, e.g., Davis v. United States*, 131 S. Ct. 2419 (2011); the collateral review exception to the Fourth Amendment, *see Stone v. Powell*, 428 U.S. 465 (1976); the harmless error doctrine, *see, e.g., Chapman v. California*, 386 U.S. 18 (1967); and the non-retroactivity principle of new law, *see Teague v. Lane*, 489 U.S. 288 (1989). *See also*; John M. Greabe, *Constitutional Remedies and Public Interest Balancing*, 21 WM. & MARY BILL RTS. J. 857, 881–88 (2013); John C. Jeffries, Jr., *The Right-Remedy Gap in Constitutional Law*, 109 YALE L.J. 87, 87–95 (1999). Other limitations on the availability of a remedy for a constitutional violation include the redressabilitly prong of injury-in-fact analysis

(continued...)

A.C.J. LEE, concurring in part/concurring in the judgment

precedent on an important question of constitutional law—least of all in a case in which the question is not properly presented.

¶42 Our law has long recognized the authority of the legislature to regulate the availability of and limitations on private claims asserting violations of the constitution. Doctrines of justiciability, political question, procedural bar, and statutes of limitations have long limited the availability of judicial review of constitutional claims. *See supra* ¶ 11 n.6. Without careful briefing on the matter, we cannot lightly assume that the legislature exceeded its authority in limiting review under the PCRA to challenges to a "conviction or sentence for a criminal offense." UTAH CODE § 78B-9-102(1).

¶43 Nor can we avoid the question by asserting that this provision is somehow "inapplicable and does not foreclose us from addressing other remedies outside the PCRA." *Supra* ¶ 19 n.7. The whole point of the sole remedy provision is to prescribe a *sole remedy*—to "replace[] all prior remedies for review, including extraordinary or common law writs." UTAH CODE § 78B-9-102(1). Thus, the fact that "Mr. Meza does not challenge a conviction or a sentence," *supra* ¶ 19 n.6, does not make the provision "inapplicable." It forecloses his right to assert a claim. That was the holding of the district court—and of part I of the lead opinion. We should leave it at that. We should hold that Meza lacks a right to sue under the PCRA, and leave for any future case the questions whether he may seek an extraordinary writ or file a 60(b) motion (and if he so claims, whether he has a constitutional right to any such remedy).

¶44 Our rules of preservation are longstanding and well-settled.[7] And there are significant barriers to our resolution of issues

---

[6](...continued)
for standing, *see, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614 (1973); the political question doctrine, *see Luther v. Borden*, 48 U.S. 1 (7 How.) (1849); and statutes of limitations.

[7] *Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 46, 321 P.3d 1054 (explaining how "[o]ur adversary system demands" adherence to preservation doctrine); *Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828 (explaining how preservation doctrine furthers "judicial economy" and "fairness" by ensuring that both the lower
(continued...)

A.C.J. LEE, concurring in part/concurring in the judgment

that are neither presented by a live controversy nor briefed by the parties on appeal—barriers ranging from the constitutional (of issuing advisory opinions)[8] to the pragmatic (of deciding questions without the benefit of adversary briefing).[9]

¶45　I can appreciate a sense of sympathy for the plight of Mr. Meza. And I understand the impulse to preserve an avenue for relief on his claim of ineffective assistance of counsel. But our role in this matter is limited. As judges our job is to decide the issues before us under the law as it stands. I would do so without reaching out to resolve questions not properly presented.[10]

---

[7](...continued)
court and the opposing party have an opportunity to address all the issues); *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("[Preservation] puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding.").

[8] *Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union*, 2012 UT 75, ¶ 23, 289 P.3d 582 ("[W]hatever else the judicial power clause may imply, it incorporates a prohibition on the issuance of advisory opinions by our courts."); *see also Gregory v. Shurtleff*, 2013 UT 18, ¶ 73, 299 P.3d 1098 (Lee, J., concurring in part and dissenting in part) ("[B]ecause the power we wield must be 'judicial,' we are foreclosed from making law or announcing our views in an advisory or other non-judicial posture.").

[9] *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1773–74 (2015) (declining to address an "important question" of whether particular statutory language was applicable because resolution would "benefit from briefing and an adversary presentation"); *United States v. Fruehauf*, 365 U.S. 146, 157 (1961) (recognizing that advisory opinions are prohibited, in part, because the issues "are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests").

[10] In light of my criticism of the lead opinion's decision to reach out to resolve issues not properly presented, I am in no position to offer my own conclusive views. But I am dubious of at least one

(continued...)

A.C.J. LEE, concurring in part/concurring in the judgment

---

[10](...continued)
additional aspect of Justice Parrish's opinion—its rejection of the State's argument that "Meza is not entitled to extraordinary relief unless he can identify the ancient writ that provided the specific relief he seeks." *Supra* ¶ 20 n.8. I would be reluctant to read our cases to have replaced the elements of common law writs with a general principle of practical "flexibility." *Supra* ¶ 20 n.8. Indeed, our decision in *State v. Barrett*, which is cited by Justice Parrish, at least arguably reinforces the viability of the elements of historical writs. 2005 UT 88, ¶ 11, 127 P.3d 682 (explaining that "the practice of specifically listing each available common law writ has been abandoned," but emphasizing that our rule 65B "can be thought of as a repository of all the extraordinary writs that, in the past, were envisioned as separate and distinct proceedings," and holding that "[t]he fact that rule 65B has subsumed the common law writs does not . . . change the reality that 'a court must look to the nature of the relief sought, the circumstances alleged in the petition, and the purpose of the type of writ sought in deciding whether to grant extraordinary relief'" (quoting *Renn v. Utah State Bd. of Pardons*, 904 P.2d 677, 683 (Utah 1995))). In any event, we should not decide this important issue in the absence of a "clash of adversary argument" to assist us in "exploring every aspect of a multifaceted situation." *Fruehauf*, 365 U.S. at 157.